Edward Jackson, Plaintiff-Appellee, v. Charles Hursey and Wardel Jackson, Defendants-Appellants.

Gen. No. 9,923.

Opinion filed March 9, 1954. Rehearing denied April 5, 1954. Released for publication April 5, 1954.

JOHN ALAN APPLEMAN, of Urbana, and EDWIN W. COLLORD, of Champaign, for appellants; JOHN ALAN APPLEMAN, of Urbana, of counsel.

W. C. NOEL, of Urbana, JOSEPH M. WILLIAMSON, and C. E. TATE, both of Champaign, for appellee.

MR. PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

This is an appeal from judgment entered against the defendants in the circuit court of Champaign county. The verdict of the jury was for $6,800, and the trial court deducted $3,500 from the verdict, this being the amount of a prior payment received by the plaintiff from Hursey's public liability carrier for damages sustained by the plaintiff in the same occurrence upon which this suit, a dramshop action is based. To get a clearer picture of the entire action, a brief review of the facts is necessary.

On March 15th, 1952, the plaintiff Edward Jackson, Ralph Massey, Wilbur Hurst, and a waitress named Jean Blake were seated at a table in the tavern operated by the defendant Charles Hursey. The premises were owned by the defendant Wardel Jackson. An altercation arose between Wilbur Hurst and the waitress Jean Blake, and after some words, Hurst struck the waitress Blake and knocked her down. She ran back of the bar, grabbed an empty beer bottle, and threw it at Hurst. He ducked and the bottle struck the plaintiff, injuring him. Subsequently, the plaintiff entered into an agreement with the defendant Charles Hursey, and executed a covenant not to sue the said

Hursey, for damages for general negligence, but specifically reserved his right to sue said Charles Hursey and others under the Illinois Dram Shop laws. For this covenant not to sue for damages sounding in general negligence on the part of Hursey, the plaintiff received $3,500. Afterwards, the plaintiff brought his suit against the defendants Hursey and Jackson under the Illinois Dram Shop laws. The jury returned a verdict in favor of the plaintiff in the amount of $6,800 and the trial court deducted the amount received by the plaintiff for the covenant not to sue, namely $3,500, leaving a judgment of $3,300 in favor of the plaintiff. From that judgment the defendants appeal.

The appeal assigns as error a number of points and they will be taken up in order. The first error assigned is that the trial court permitted prejudicial error in refusing to permit the testimony of Joseph Hern and the defendant's offer of proof to impeach the testimony of Benny Robinson and Ralph Massey. The trial court held that this evidence was cumulative and not admissible. The trial court permitted the plaintiff to put in evidence that Hurst was intoxicated. From the record it would seem that several witnesses for the plaintiff testified on this point. To refuse to permit the defendants to refute this testimony, either by direct testimony, or by impeachment would seem to refuse to the defendants one of the principal parts of their defense. If, as the defendants contend, the witnesses testified one way in the trial and made contradicting statements before the trial, the defendants should have been entitled to show such contradictions. This character of testimony is not cumulative but more in the nature of refutation of the witness' testimony, and goes to the truth of the testimony by the witness. Certainly the trial court should have the right to refuse testimony that would serve no useful purpose in the trial. Whether or not the trial court has the right to arbitrarily

limit the number of witnesses offered to combat the testimony of witnesses offered by the other side, is subject to question. In the case of *Green v. Phoenix Mutual Life Insurance Company*, 134 Ill. 310, which was a suit to set aside a sale of real estate, claiming that the sale was invalid because of insanity on the part of the plaintiff at the time of the sale, there were thirteen witnesses offered to show insanity, and the trial court then stopped this line of testimony on the ground that three experts was the rule and that he did not want to permit everyone who knew the complainant to testify. The court in that case, distinguished between the number of witnesses permitted to testify on conceded fact, or a collateral issue, but held that where the fact is in dispute, the court erred in limiting the number of witnesses. In this case, the matter of intoxication of Hurst and the waitress Jean Blake was a very material part of the case, and was not conceded. In the case of *Chicago City Railway Co. v. Wall*, 93 Ill. App. 411, the trial court limited the number of witnesses, and that court said: "The court might have ruled that, after a given number of witnesses had been examined upon the matter, all witnesses thereafter called and examined only upon the same matter should be made witnesses only at the cost of the party calling them. But beyond this we think the court could not thus impose such an arbitrary limit upon the amount of evidence which the litigant might present to maintain a material issue in the cause."

 The case of the *People v. Pruszewski*, 414 Ill. 409, while not directly in point, does establish the point that testimony of a non-expert witness, offered on a material point, is admissible, and the exclusion of the testimony of such a witness is prejudicial error in that it deprives the defendant of a fair opportunity to fully and completely present his defense.

 Because of testimony of witnesses on the part of the plaintiff, showing intoxication of the moving parties in the action, it was error for the trial court to refuse to permit the defendants to contradict such testimony by direct or impeaching evidence.

 The next point urged as error is that the trial court permitted testimony as to the intoxication of the waitress Jean Blake, although the complaint did not so allege, and that there was no testimony that the defendants had sold or given any alcoholic liquor to her. The complaint did allege: "That at said time and place aforesaid, there was upon said premises a certain person or persons who was or were then and there intoxicated and whose intoxication was then and there wholly or in part caused by the selling or giving of intoxicating liquors to him or them by the agents or servants of the defendant Charles Hursey, who was at said time the owner and operator of said Harlem Deluxe Tavern." There is the testimony of Wilbur W. Hurst that Jean Blake was drinking beer. Other witnesses were permitted to testify that Jean Blake was drunk. The defendants take the position that it was necessary to establish the sale or gift by the defendants of alcoholic liquors to Jean Blake and in the absence of evidence showing such sale or gift, it was reversible error to permit testimony to show she was intoxicated. In support of this position they cite the case of *Blackwell v. Fernandez*, 324 Ill. App. 597. In that case the court held that a sale or gift was necessary in order to establish liability under the Dram Shop Act. The case of *Gunderson v. First National Bank of Chicago*, 296 Ill. App. 111, is also cited by the defendants. That case also holds that in order for plaintiff to recover under dramshop law for personal injuries, it was incumbent upon plaintiff to prove that the tavern operator either sold or gave liquor to the plaintiff's assailant. The other cases cited are to the same effect. None of the cases cited, however,

go to the exact point raised by the defendants, that it was reversible error to allow evidence of the intoxication of Jean Blake, without showing that the defendants had given or sold her intoxicating liquor. This court cannot agree with the defendants' contention in that regard. There is evidence that the waitress Jean Blake was drinking. The complaint does allege that there were on the premises, persons who had been sold or given intoxicating liquors. There is ample testimony that intoxicating liquor had been sold to Hurst, and that Hurst started the chain of events that led to the injuries to the plaintiff. It may well be that the evidence as to the intoxication of Jean Blake is outside the pleadings. However, if there is error in that respect, this court does not regard it as reversible error. As was said in the case of *Klopp v. Benevolent Protective Order of Elks,* 309 Ill. App. 145, "It is a frequent occurrence in our *nisi prius* courts that suits seeking recovery of damages under the Dram Shop Act arise wherein altercations so begun have ended in fights and result in injuries to the person, property or means of support of some other person or persons. To hold that a sober person who happened to be in a position to be injured in consequence of a condition caused by a dispenser of liquor could not recover would defeat the purpose of the statute."

 The next point urged by the defendants as error is that the trial court gave instruction No. 2 for the plaintiff. This instruction set forth in *haec verba* the entire statute, and the defendants contend a large portion of the statute, so given in the instruction, had no possible relevancy to the present case. Our courts have held that in a close case factually it is important that the jury be instructed correctly. *Anderson v. Middleton,* 350 Ill. App. 59. It has been held that the construction and interpretation of a statute belongs to the court and should not have been left to the jury. *People*

604

*v. Peden,* 109 Ill. App. 560. Here, the entire section of the statute was submitted as an instruction. It was held in *Magill v. George,* 347 Ill. App. 6, that instructions must be based upon the issues raised by the evidence, and it is reversible error to give instructions where there is no evidence upon which the instruction can be based. Citing in that case, *Rosenkrans v. Barker,* 115 Ill. 331; *Russell v. Consolidated Forwarding Corp., Inc.,* 327 Ill. App. 204; *City of Taylorville v. Stafford,* 196 Ill. 288. In this case we must hold that the giving of plaintiff's instruction No. 2 was reversible error. More than one half of the instruction had no possible application to the issues in this case. At best it would tend to confuse the jury as to the real issues before it. It must be remembered that juries are composed of laymen who are not trained to separate issues and to disregard the irrelevant matters. That function should be performed by the court, and to give an instruction that raises other issues not in the trial is reversible error.

 The next matter assigned as error, is alleged prejudicial conduct on the part of counsel for the plaintiff. This court has read the questions and answers complained of, and while we are of the opinion that the questions and answers were deliberately designed to create in the minds of the jury sympathy for the plaintiff, and antagonism to the defendants, yet the conduct of the trial judge was such that if there was error, it should have been corrected by the rulings of the trial court. In the heat of litigation, such things occur, questions are asked and intended to prejudice the jury, yet the trial court, by his rulings and instructions can prevent any damage in the minds of the jury. In reading the testimony of this case, the many objections and rulings thereon, it would seem that the trial court did an admirable job in his rulings and instructions as to the evidence. While it is apparent that counsel for the

605

plaintiff went far afield in his questions, and the conduct of counsel for plaintiff is certainly subject to criticism, yet because of the rulings and instructions by the trial court, we do not believe that this constituted reversible error.

 ██ The next error assigned by defendants is that the plaintiff split a single cause of action for personal injury. The plaintiff had already received $3,500 for general negligence on the part of the defendant Hursey. For this $3,500 he had executed and delivered his covenant and agreement not to sue or molest the said Charles Hursey for damages sounding in general negligence. In this covenant and agreement it was specifically reserved on the part of the plaintiff a right to sue Hursey and others under the Illinois Dram Shop Act. It is true that the injuries sustained by the plaintiff all happened at one occurrence. The defendants contend that there was only one loss or injury and he is entitled to only one satisfaction for that loss or injury. In support of this the defendants cite the case of *McClure v. Lence*, 345 Ill. App. 158, where five young people were in a car which was struck by a train, and three of the young people were killed. The representatives of the deceased persons executed a release under seal with the railroad company, and were paid. Later, they brought suit against a tavern operator, claiming that the tavern operator had sold the young people liquor and was therefore liable. In that case, the court said: "Therefore, under the Dram Shop Act, where the injury results in death under circumstances where the decedent himself might have maintained an action for injuries had he lived, a situation is created where two remedies are potentially available to the next of kin: an action for pecuniary injury under the Injuries Act and an action for injury to means of support under the Dram Shop Act. Does this require the conclusion that the legislature by its action intended that two recover-

606

ies should be available for a single ascertainable injury? We think not, for overriding all the multiple remedies and actions created by these two statutes is the salutary principle rooted deeply in our law that for one injury but one satisfaction may be had." This view was reaffirmed in *McClure v. Lence,* 349 Ill. App. 341. In that case, a release under seal was signed and delivered. It is a well known and accepted rule of our law that the release of one tort-feasor will release the other tort-feasors in the same matter. That is not the law as to a covenant not to sue. In the *McClure* case, the next of kin had two remedies. They could sue the railroad which was the immediate cause of death, or they could sue the tavern operator who had sold the deceased intoxicating liquors. They chose to settle with the railroad and thereby released the tavern operator, although the two remedies were under different theories of damages. One under the Injuries Act, and the other under the Dram Shop Act. Here the plaintiff executed a covenant or agreement not to sue the defendant Hursey under the Injuries Act, but specifically reserved his right to sue under the Dram Shop Act. The defendant Hursey claims this was without his knowledge or consent. This we think is immaterial. If the defendant can claim that he is exempt from suit because of the execution of this covenant or agreement not to sue, under the Injuries Act, he cannot take advantage of it in one breath and deny its validity in the other. Here there was a definite agreement between the parties to split the causes of action. We do not think the defendant can complain of its effect at this time.

In the case of *De Lude v. Rimek,* 351 Ill. App. 466, the court there held that while a plaintiff is entitled to only one satisfaction for the same injuries sustained in any accident, that where a plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such payment, made before or after

607

judgment, might be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances. But this is not a case of joint tort-feasors, since there was only one party, as tort-feasor, so the law as to release of one joint tort-feasor releasing other joint tort-feasors will not apply. It is not really a case of splitting the causes of action, since the plaintiff had two causes of action, and only collected under one. Under the authority of *De Lude v. Rimek,* 351 Ill. App. 466, any money he received should be credited against his total damages, but that would not prevent him from pursuing both remedies, to the end that he might be fully compensated for his injuries. This was recognized in the covenant or agreement not to sue between the parties. The defendant cannot be permitted to take refuge behind an instrument wherein he specifically agreed that the plaintiff could pursue another remedy to receive full compensation for his injuries. It is true that any payments he received must be credited against his total amount of injury or damages, but that would not, in this case, which in effect amounts to an agreement between the parties, deny the plaintiff the right to follow up with suit under the Dram Shop Act.

For the reasons stated, we are of the opinion that the plaintiff is entitled to sue under the Dram Shop Act, and that any money received for the covenant not to sue under the Injuries Act must be deducted from the total amount decided by a jury to be compensation for his injuries.

Because of the other errors noted, the judgment is reversed and remanded.

*Reversed and remanded.*

Mr. Justice Hibbs took no part in the consideration or decision of this case.