Theodore C. Bolek, Administrator of the Estate of Theodore C. Bolek, Jr., Deceased, Plaintiff-Appellant, v. West Shore Transport Co., Inc., a Corporation, and Robert Esposito, Defendants-Appellees.

Gen. No. 49,444.

First District, First Division.
January 25, 1965.
Rehearing denied February 18, 1965.

Louis G. Davidson, of Chicago (Eugene I. Pavalon and Sidney Robin, of counsel), for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, William H. Symmes and John M. O'Connor, Jr., of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a wrongful death action, in which the plaintiff administrator appeals from a not guilty verdict and judgment, contending that the trial court erred in striking part of the complaint and in the giving and refusing of instructions.

The decedent, a 9-year-old boy, was fatally injured on August 19, 1957, while riding a bicycle which collided with a tractor-trailer in a street crossing. He was survived by his parents and a minor sister. An eyewitness and two post-occurrence witnesses testified for plaintiff, and the tractor driver testified for defendants.

Plaintiff's eyewitness, Emil Byke, testified that about 8:25 p. m., on the day of the occurrence and after he had purchased a newspaper at the northeast corner of 22nd and Western, he walked south to the north curb of 22nd Street, intending to proceed south across 22nd Street in the east crosswalk. The light was green for westbound traffic on 22nd Street. He

heard a shout behind him, and as he turned he saw decedent riding a bicycle on the sidewalk of 22nd Street, going west toward Western. "His bicycle was moving as fast as a brisk walk, about 2½ or 3 miles per hour. I saw the boy turn his head to the right and shout something to a boy who was behind him on a bicycle about 15, 20 or 25 feet. The bicycle then went off the sidewalk onto Western Avenue and the boy turned around and saw a vehicle in front of him which I saw at the same time. . . . [It] was a tractor-trailer. The boy kept moving forward with the bicycle, west on the crosswalk but he was going slow. He was having a hard time balancing the bicycle. He was zigzagging it. Around ten feet away from the curb, when he approached the vehicle he raised his left hand and all of a sudden the bicycle shot over to the right and he fell to the left and as soon as he hit the ground the front wheels of the tandem axle ran over the boy's head and boy's body. . . . Yes, the rear wheels of—but the first axle . . . ." Byke heard no horn, and he and another person shouted "at the vehicle" and it "stopped approximately 50 feet beyond the boy going north on Western Avenue. . . . The tractor-trailer was making a right turn on Western Avenue, and was making a right, wide turn. . . . He was going east—west on 22nd Street, and then he turned northbound on Western Avenue. . . . The speed of the trailer and tractor . . . was between five and ten miles per hour. I heard the tractor shifting gears as it was negotiating this turn. The traffic at this time was very light."

On cross-examination, he testified that the street lights were on and it was dusk. He did not notice a light on the bicycle—"It didn't attract my attention." When the boy came off the sidewalk, "the tractor was north of the crosswalk on Western Avenue but not the trailer. The trailer was following the

tractor around. The boy on the bicycle went into the intersection approximately 6 or 10 feet. . . . Yes, the tractor of the trailer was already beyond the crosswalk. Then he came forward and went right into the middle of the trailer. He was moving all the time. He had difficulty balancing it. I think that's why he was turning the wheel. I can't say if it was because of the bump or the slowness of the [bicycle]. When I heard him shout, at that moment I looked at what he was hollering at and I noticed the boy on the second bicycle behind him. This was right when he went off the curb. . . . When he came in contact with the trailer, he was about a foot off to the north of the crosswalk. When the tractor and trailer stopped, the back of the trailer was about 50 feet from the crosswalk." On redirect, he was asked, "Did it begin to turn northbound before the boy actually entered the crosswalk?" and he answered, "I can't say that. No."

Plaintiff's two post-occurrence witnesses were a fire lieutenant and a policeman. The fire lieutenant described the area, the location of decedent's body, and the tractor-trailer. The policeman testified that the defendant driver stated "that his right rear mirror was set too high and as he made his turn he was unable to see the boy on the bicycle." When cross-examined about the statement he attributed to the defendant driver, he said, "When I checked my written record there was no inclusion of this statement that I have testified to today."

The defendant driver testified that "following the accident I was questioned by certain police officers and made out a full report at the police station." He denied that he told the police officer that his rearview mirror on the right side was improperly adjusted. We note, here, that in response to plaintiff's interrogatory, "What was the height of the rearview

241

mirror above the ground at the time of the occurrence in question?" defendants answered, "6 feet to the center."

At the conclusion of plaintiff's case, the trial court struck subparagraphs 5(b) and (c) and all of paragraph 6 of the complaint. Of paragraph 5, there remained subparagraphs (a) and (d), which charged that defendants "(a) carelessly and negligently maintained, drove, managed and operated said tractor and trailer," and "(d) carelessly and negligently failed to sound a reasonable warning with the horn of the said tractor and trailer when such warning was reasonably necessary to insure safe operation; contrary to and in violation of Section 115, of Article XV, of the Uniform Act Regulating Traffic on Highways, of the State of Illinois."

Plaintiff contends error, asserting that subparagraph 5(b) would have properly placed before the jury the issue of defendants' negligence in failing to keep a reasonably careful lookout; that subparagraph 5(c) would have placed in issue the defendants' violation of the Illinois statute providing that no vehicle may be turned from a direct course upon a highway unless such turn can be made with reasonable safety; and that paragraph 6 would have placed in issue the defendant West Shore's failure to adequately equip its vehicle or to provide a helper so as to enable its driver to observe conditions to the rear and to the right side of the truck.

Although we have carefully considered plaintiff's authorities to support his contentions as to the stricken paragraphs, we believe a discussion of them is unnecessary here, because we think the factual circumstances are dissimilar.

Subparagraphs (a) and (d) sufficiently presented to the jury the decisive issues in this case. Subparagraph 5(a) presented the over-all and ultimate issue

242

of whether defendants carelessly and negligently maintained, drove, managed or operated the tractor and trailer prior to and at the time of the occurrence. This issue encompassed the more specific allegations of negligence contained in stricken subparagraphs (b) and (c). Subparagraph 5(d) presented the issue of whether the defendant driver had "failed to sound a reasonable warning with the horn." This was a proper question for the jury, because the witness, Emil Byke, testified he heard no horn, although he did hear the gears shift.

 We find it was not error to strike subparagraphs 5(b) and (c). Plaintiff produced no evidence as to the specific conduct of the defendant truck driver prior to the occurrence, and no evidence which indicated that the truck driver had failed "to keep a reasonably careful lookout" or to give an appropriate visual signal before turning onto Western Avenue. Without sufficient factual basis, it was not improper to exclude these issues.

We next consider plaintiff's contention that the trial court improperly struck paragraph 6 of the complaint. This paragraph primarily alleged negligence in failing to equip the tractor with a rearview mirror, which would provide an adequate view of the driver's position to the rear of the right side of the vehicle, and in failing to have a helper to keep a lookout for traffic along the right side. The statutory provision relating to mirrors (Ill Rev Stats 1957, c 95½, § 214) provides that motor vehicles which are so constructed or loaded as to obstruct the driver's view to the rear thereof, from the driver's position, "shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the *rear* of such vehicle." (Emphasis supplied.)

■ The record shows that the tractor was equipped with a rear view mirror, and there is no direct evidence as to how it was adjusted. The driver denies he told the police that it was improperly adjusted. As decedent rode into the side of defendants' trailer at a right angle to it, we fail to see how either the adjustment of the rearview mirror, or a helper, could have prevented the collision. There are no facts shown here to demonstrate a lack of due care by defendants. We find no error in striking paragraph 6 of the complaint, because the evidence does not support its allegations.

Plaintiff next contends that the court erred in giving defendants' instructions 3 and 5. These instructions are grounded on section 2 of the Wrongful Death Act (Ill Rev Stats c 70), which provides:

"In any such action to recover damages where the wrongful act, neglect or default causing the death occurred on or after July 14, 1955, it shall not be a defense that the death was caused in whole or in part by the contributory negligence of one or more of the beneficiaries on behalf of whom the action is brought. Provided, however, that the amount of damages given shall not include any compensation with reference to the pecuniary injuries resulting from such death, to such contributorily negligent person or persons; and provided, further, that such contributorily negligent person or persons shall not share in any amount recovered in such action."

Instruction 3 states:

"If you find that Theodore C. Bolek and Dorothy Bolek negligently contributed to cause the death of the decedent, the negligence of that person does not bar recovery by the plaintiff,

but in any award you may make you may not include damages for any pecuniary injuries suffered by Theodore C. Bolek and Dorothy Bolek."

Instruction 5 informed the jury of the City of Chicago ordinance which requires certain equipment on bicycles. It provides, in substance, that a child's parents "shall not authorize or knowingly permit any child . . . to violate any of the provisions of this chapter applicable to bicycles." The provisions include prohibitions against the use of a bicycle at nighttime, without a "head lamp" and a rear reflector and against the operation of a bicycle not equipped with a bell or an effective brake. The instruction concluded with: "If you decide that Theodore C. Bolek and Dorothy Bolek violated the ordinance on the occasion in question then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not Theodore C. Bolek and Dorothy Bolek were contributorily negligent before and at the time of the occurrence."

Plaintiff asserts there was no evidence that the ordinance was violated, and if it was, "the violation could not have been the proximate cause of the injury." Plaintiff argues the lack of a headlight and rear reflector could not have been the proximate cause of the accident. Further, as to instruction 5, plaintiff contends that "the last paragraph of that instruction is clearly erroneous in that it failed to instruct the jury that before a violation of the ordinance could bar the recovery of Theodore C. Bolek and Dorothy Bolek, it must be found that the violation of the ordinance was the proximate cause of the occurrence."

Plaintiff cites cases to show that it is reversible error for a trial court to give instructions setting

forth ordinances and statutes when they do not relate to an issue in the case, or to give an instruction containing an entire ordinance or statute when a portion of the ordinance or statute does not relate to the issues in the case. (Jackson v. Hursey, 1 Ill App 2d 598, 604, 605, 118 NE2d 348 (1954); Lobstein v. Sajatovich, 111 Ill App 654, 660 (1904); Soibel v. Oconto Co., 299 Ill App 518, 524, 20 NE2d 309 (1939).) Also, as to the contention, "it is error to instruct on an ordinance without further instructing that a violation of the ordinance bars recovery only if it is the proximate cause of the occurrence," plaintiff cites Star Brewery Co. v. Hauck, 222 Ill 348, 352, 78 NE 827 (1906); Penwitt v. City of Chicago, 315 Ill App 444, 447, 43 NE2d 159 (1942); and Hartnett v. Boston Store of Chicago, 185 Ill App 332, 334 (1914).

■ The defendants argue that instruction 5 properly informed the jury as to the ordinance, since a photograph of decedent's bicycle, taken soon after the occurrence and in evidence, does not show a head lamp or a bell on the bicycle and, further, that at the time of the occurrence, the street lights were on and it was dusk. We think reasonable men might infer from the evidence that the bicycle was not provided with a head lamp, and that decedent's parents knowingly permitted him to use a bicycle without a "head lamp" at the time in question, and this may have contributed, in whole or in part, to the collision. However, we do not see that this inference can be carried over to the lack of a bell, brake, or rear reflector. We find it was proper for the trial court to include in instruction 5 the question of violation of that part of the ordinance which required a head lamp, but improper to include the other items. As the given instructions include the first sentence of IPI 15.01 on proximate cause, we see no error in not making "proximate cause" part of No. 5.

246

■ As to instruction 3, plaintiff argues error because "there is no direct evidence, or any evidence from which a reasonable inference can be drawn, that the parents were in *any way* negligent, or that any of their actions were *a* proximate cause of the accident." (Emphasis supplied.) Cited is Crutchfield v. Meyer, 414 Ill 210, 111 NE2d 142 (1953), which held that under the facts of that case, due care of the parents was established as a matter of law. We do not consider this case in point here. There is evidence in this record from which reasonable men might infer the parents were negligent, "in whole or in part," because of the absence of a head lamp, which the jury might have considered a proximate cause of the collision. We note that instruction 3 is IPI 31.04, heretofore approved by this Division when given with a proper factual basis, which basis we believe to be present here.

■ Plaintiff further contends that the court erred in refusing to give plaintiff's instruction 2, "which would have informed the jury that a fact may be proved by circumstantial evidence, and which would have defined circumstantial evidence." It is argued that "a significant portion of the evidence was of a circumstantial nature." We find no merit here, because the evidence does not show that an instruction on circumstantial evidence would have aided the jury in the determination of the verdict. From an examination of all of the instructions, we are satisfied that the jury was sufficiently instructed as to the issues in this case.

■ ■ We believe this record comes within the rule expressed in Kosowski v. McDonald Elevator Co., 33 Ill App2d 386, 179 NE2d 469 (1962), at p 397:

"If judgment or findings of trial court is the only one which could be properly rendered con-

sistent with evidence and law of the case, error in instructions is not reversible error. . . . The ultimate goal of a court is a fair and just result and when it is clear that the case has been fairly tried and that the judgment is clearly right, the judgment should be affirmed by an Appellate Court."

We conclude that this case was fairly tried, the jury was not misled by any of the alleged erroneous instructions, the verdict was correct, and another trial would result in the same verdict. The instant judgment is therefore affirmed.

Affirmed.

KLUCZYNSKI, J., concurs.

BURMAN, P. J., dissenting:
Because of the prejudicial trial errors, I am of the opinion that this case should be remanded for a new trial.

The evidence clearly shows that the deceased, a nine-year-old boy, rode his bicycle from the sidewalk into Western Avenue at a crosswalk. The signal light was green in his favor. He was suddenly confronted with impending danger and was struck by the defendants' trailer-truck which made a turn from Twenty-second Street into Western Avenue and into the boy's path. This action was brought for the benefit of the boy's survivors, his parents and a younger sister.

At the conclusion of the plaintiff's case and over his objection, the court granted the defendants' motion to strike two parts of the complaint which would have put in issue the defendants' violation of Ill Rev Stats 1957, c 95½, § 162(a) providing that no vehicle may be turned from a direct course upon a highway

unless such turn can be made with reasonable safety and which would have put in issue the defendants' negligence in failing to keep a reasonably careful lookout. Moreover, the court, over plaintiff's objection, instructed the jury that a Chicago municipal ordinance required a bicycle to be provided with certain equipment and *that the violation of the ordinance by the parents of the boy would bar their recovery.* I believe all these actions were not warranted under the evidence and constituted reversible error.

In order to justify the giving of an instruction, there must be some evidence in the record to support the theory set out in the instruction. Biggerstaff v. New York, C. & St. L. R. Co., 13 Ill App2d 85, 141 NE2d 72. Instructions not sustained by the evidence should not be given and requests therefor are properly refused. Down v. Comstock, 318 Ill 445, 149 NE 507; Ohlweiler v. Central Engineering Co., 348 Ill App 246, 109 NE2d 232. It is reversible error for a trial court to give instructions setting forth ordinances or statutes, when the ordinances or statutes do not relate to an issue supported by evidence in the case, or to give an instruction containing an entire ordinance or statute when a portion of the ordinances does not relate to an issue raised by the evidence in the case. Jackson v. Hursey, 1 Ill App2d 598, 118 NE 2d 348; Lobstein v. Sajatovich, 111 Ill App 654.

A review of the record indicates that there was no evidence of the violation of the ordinances which were the basis for the instructions given by the trial court. The instruction first set forth that part of the ordinance which provides that parents shall not authorize or knowingly permit their children to violate any of the provisions applicable to bicycles. There was no evidence offered from which the jury could conclude that the parents had authorized or permitted the boy to violate the provisions of the ordinances.

249

The instruction included sections of the ordinance requiring that bicycles in use at nighttime be equipped with head lamps and rear red reflectors; and that bicycles be equipped with a bell or other device giving a signal audible at a distance of at least 100 feet; and that bicycles be equipped with an adequate brake.

No testimony was given by any witness regarding the lack of equipment on the bicycle. A lieutenant of the Chicago Fire Department who responded to the call testified that he "unwound the bicycle from the boy's legs" and "threw it over the curb." On cross-examination he was shown one of the plaintiff's exhibits, a photograph of the bicycle, and was asked "I take it there's no light on the bicycle on the front?" He answered, "That I didn't pay any attention to." On cross-examination, the father of the boy was asked, "With regard to the bicycle that your son had, did it have any light on it?" Objection to the question was sustained. The photograph of the bicycle alone was insufficient to support this critical instruction without any further proof. It was also error to give this instruction because the contributory negligence of the parents was not made an issue in the case either by the pleadings or by any direct evidence.

In my judgment, the trial court, in striking two parts of the plaintiff's complaint, acted to strip the complaint of the main theory of the case and this act was equivalent to directing a verdict for the defendants and improperly taking the issues from the jury.

The evidence establishes that a large trailer-truck, which had been travelling west on Twenty-second Street in the inner lane of traffic, began a wide right turn into Western Avenue and into the pedestrian walk which crossed Western Avenue; the driver made this turn without sounding his horn. Under these cir-

cumstances the trial court erred in striking plaintiff's complaint which would have placed in issue whether the defendants had violated § 65(a) of Article VIII of the Uniform Act Regulating Traffic on Highways which provides:

> No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (Ill Rev Stats 1957, c 95½, § 162(a).)

I believe that there were sufficient facts in the record concerning the dimensions of the truck and of the intersection, the speed and conduct of the boy on the bicycle and the speed and manner in which the truck made its turn, from which the jury could reasonably have found that the truck driver knew or should have known that the boy was proceeding across Western Avenue, and that the movement of the truck would mislead the boy as to the direction it would take.

Two cases involving turning vehicles are instructive. In Saunders v. Schultz, 22 Ill App2d 402, 161 NE2d 129, a motor cyclist was killed when he struck the right rear of a farm truck. The cyclist and the truck were approaching each other on the same highway when the truck turned across the cyclist's path and failed to clear the cyclist's lane of traffic. The court said at page 419:

> It is undisputed that decedent was at all times proceeding in his proper traffic lane. *If he saw*

*defendant's truck before defendant started to make his left turn he had a right to assume that the truck would continue in its lane of traffic and not make a left turn across his traffic lane.* Whether he, under all the circumstances disclosed by the evidence, was in the exercise of due care and whether defendant was guilty of negligence upon the occasion in question were questions of fact for the jury to pass upon and were submitted to the jury under proper instructions. (Emphasis supplied.)

In Johnson v. Railway Express Agency, 131 F2d 1009 (7th Cir), the trial court submitted to the jury the question of defendant's violation of Section 69 of the Uniform Act Regulating Traffic on Highways which then provided:

Any driver of a vehicle approaching an intersection with the intent to make a left turn shall do so with caution and with due regard for traffic approaching from the opposite direction and shall not make such left turn until he can do so with safety. (Ill Rev Stats 1939, c 95½, § 166.)

In that case, the plaintiff, a boy of thirteen years of age, riding his bicycle in a westerly direction near the curb at about ten o'clock at night in late April, approached an intersection where he saw the defendant's truck proceeding east on the same street and approaching the same intersection at about the same time. The boy, observing the truck beginning to make a left turn, attempted to pass it on the side away from the direction in which the truck was turning. On so doing, the boy met oncoming traffic and therefor cut back and collided with the back end of the truck. The truck driver testified that in making the turn he stopped at the center of the street to permit

the traffic, which was behind him and which the boy met, to pass him and that then he proceeded to turn and that, until the collision, he did not see the boy. The court said that though the boy might have stopped his bicycle in time to have avoided the collision, it would not be helpful to speculate on what happened. The jury returned a verdict for the plaintiff, and, on appeal, the court discussed the propriety of the trial court's submission to the jury of the issue of the violation of the statute which is somewhat similar to the statute in the instant case. The court stated at page 1012:

> If, by the exercise of ordinary care, however, he could have discovered plaintiff's approach, he was charged with the duty not to make "such left hand turn until he can do so with safety." We think a jury question was presented as to whether defendant's driver should have been aware of plaintiff's approach, and whether the blocking of plaintiff's passage was the proximate cause of the collision.

The facts warranting submission of the issue of violation of the statute in the case at bar are stronger than those in the Johnson case. Here a boy of younger age was riding his bicycle from the sidewalk into the crosswalk, a proper place for pedestrians to cross the street, and the traffic light was in his favor.

The two principal cases on which the defendant relies are inapposite here. Neither Scott v. Marshall, 105 NE2d 281 (Ohio App) nor Mumford v. United States, 150 F Supp 63 (D Md) involved a collision with a vehicle which turned from a direct course of travel into a traffic lane or crosswalk where the presence of other vehicles or pedestrians was properly to be expected.

The second part of the complaint, which the court erroneously struck, would have put in issue the defendants' negligence in failing to keep a reasonably careful lookout to the right as he made his turn. I believe that the jury could well have reached the conclusion that, had the driver been keeping a reasonably careful lookout before initiating and completing his turn into the crosswalk, he would have seen the boy on the sidewalk about to enter the crosswalk. A similar case is Reinmueller v. Chicago Motor Coach Co., 341 Ill App 178, 93 NE2d 120. In that case the decedent alighted from the defendant's bus, proceeded to a crosswalk and walked into the side of the bus, which, after stopping to discharge passengers, made a sweeping right turn. The bus driver was unaware of the occurrence at the time it happened although his view to the right was unblocked. The Appellate Court affirmed a judgment for the plaintiff saying at page 183:

> . . . [T]he fact that the bus made a wide sweeping turn from a southwesterly direction to a northerly direction and Schrubbe's [the bus driver's] vision being unobscured raises a question of fact as to whether or not in the exercise of due care Schrubbe should have seen the plaintiff before the accident.

In the instant case the truck driver's view of the walk and crosswalk was unobstructed. He knew that the traffic light was green for persons crossing Western Avenue and should have anticipated persons moving across the street at the crosswalk with the light in their favor. The issue of a reasonably proper lookout was all the more necessary because there is evidence in the record from which the jury could reasonably conclude that the rear view mirror on the truck was so adjusted that the driver could not ade-

quately observe conditions along the side of the equipment before and when about to make and while making the turn and also because it is undisputed that the driver was without a helper on this long trailer attachment.

Because the trial court erred in the respects mentioned above and because, absent these errors, it is reasonable to believe that a new trial could result in a verdict for the plaintiff, this case should be reversed and remanded because of prejudicial error.