June Hampton Darby, Plaintiff-Appellee, *v.* Checker Company, Inc. *et al.*, Defendants-Appellants.

(No. 53106;

First District—June 1, 1972.

190

Morton H. Meyer, and Gerrard and Gerrard, both of Chicago, for appellants.

Steinberg, Polchek and Steinberg, of Chicago, (Sidney Z. Karasik and Ellis B. Rosenzweig, of counsel,) for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Checker Co., Inc., owned the Tivoli Hotel, Chicago. The defendants, Bernard Miller and Bernard Goldblatt, through their company, Southtown Management, operated the hotel. About 8:00 A.M. on Sunday morning, April 15, 1962, the fourth floor of the hotel was swept by fire. The plaintiff, June Hampton, was in room 403 with Alphonso Darby, whom she subsequently married. In her attempt to escape the flames she climbed out the window of the smoke-filled room and clung to bed clothes which Darby had tied to a dresser. She choked from the smoke, became dizzy, fell to the courtyard below and was seriously and permanently injured.

She brought an action for damages against the defendants charging them with negligence and with willful and wanton conduct in operating the hotel without adequate safeguards against fire. A jury returned a verdict in her favor and assessed her damages at $52,500.

In seeking reversal of the judgment the defendants contend that they

are entitled to judgment as a matter of law since they were not proved guilty of any negligence proximately causing the plaintiff's injuries and because she was guilty of contributory negligence. Alternatively, they seek remandment and a new trial because of errors pertaining to evidence, instructions and the examination of a witness.

■■ Innkeepers must exercise care to secure the safety of their guests. (*Lipscomb v. Coppage* (1968), 44 Ill.App.2d 430, 197 N.E.2d 48; *Fortney v. Hotel Rancroft* (1955), 5 Ill.App.2d 327, 125 N.E.2d 544.) The defendants agree that the plaintiff was an invitee on their premises and that they owed her the duty of exercising reasonable care for her safety. They assert, however, that her allegations of negligence, as stated in her complaint and as incorporated in an instruction given to the jury, were remote and speculative and beyond the scope of any duty they owed her. These allegations were: failing to warn the plaintiff of the fire so as to afford her sufficient time to leave the hotel; failing to provide her assistance in leaving; failing to provide a safe, suitable and proper means of leaving the hotel, and failing to extinguish the fire or preventing it from spreading.

■■■ Much of the testimony at the trial dealt with the plaintiff's allegation that the defendants failed to warn her of the fire. Such an issue has been held to be a proper one for a jury's consideration. (*Coukoulis v. Schwartz* (1938), 297 Ill.App. 377, 17 N.E.2d 601.) For the defendants to be entitled to judgment as a matter of law all the evidence on this issue, when viewed most favorably toward the plaintiff, would have to be so overwhelmingly in favor of the defendants that a verdict for the plaintiff could never stand.

The fire started in room 415. This room was on the inside court of the hotel and about 18 feet from the elevator. The fire was discovered by Luke Morris and his wife, residents in room 406, who were aroused by the barking of their dog and the smell of smoke. Mrs. Morris called the switchboard operator and reported that the building was on fire. The operator told her that someone would be up. Mrs. Morris' call was received by Ida Braswell who worked from midnight to 8:00 A.M. She turned to Geraldine Thomas, the resident manager of the hotel, and to Ardeen Smith, the operator who was to relieve her at 8:00 A.M., and said: "somebody saw smoke upstairs and thinks there is a fire * * * let's go to the fourth floor and see if there is a fire up there." She and Thomas, and a resident named McLemore, took the elevator to the fourth floor. Braswell saw smoke coming from room 415. Thomas opened the door. The room was full of smoke and there was a fire in the area of the bed. Thomas closed the door and took the elevator downstairs. She said McLemore went along the hall knocking on the doors numbered

upward of 415. Braswell pulled the fire alarm next to the elevator and ran in the opposite direction. She passed all the rooms numbered downward from 415 but knocked on no doors. She "believed" she yelled "fire" as she ran along the corridor. She rushed down the stairway which was adjacent to rooms 401 and 402.

None of the fourth floor tenants who testified at the trial was warned of the fire by hotel employees. Most of them discovered it by opening the doors or windows of their rooms and seeing the smoke and flames. Three tenants said they heard a faint buzz when they opened their doors but all testified that the hotel's fire alarm was inaudible when the doors were closed. The first fireman who entered the building stated that he proceeded through the first floor from the front to the rear and heard no alarm. On the other hand, the fire alarm system was inspected by the Chicago Fire Department less than a month before the fire and found to be in good working order. The hotel employees testified that after the alarm was sounded it rang loudly for maybe five or ten minutes and then began to fade. After this only a buzzing sound could be heard.

Ardeen Smith testified that she was at the hotel's desk checking over the cash on hand when she heard the alarm. Because of prior false alarms she intended to turn it off. A moment or two later as she stepped toward the alarm-box to stop the alarm, she heard Thomas, who had returned to the lobby, cry: "Don't Miss Smith; it's real." The switchboard lighted up and she went to the board. After calling the fire department she attempted to answer the tenants' calls; but the board "went dead." Thomas also tried to talk to the tenants but she too was unsuccessful. The switchboard was alight with calls and she kept saying "there is a fire; there is a fire" but there was no response.

In the meantime, in room 406, which was on the street side of the hotel, Mrs. Morris ran to the window and called out: "We're trapped up here on the 4th floor!" When the firemen arrived they put up a ladder and rescued the Morrises and their dog. In room 402, which was on the same side of the building as 406, the tenants opened their door and were met by a ball of reddish-black smoke; smoke and flames were coming down the hallway. They attempted to telephone the desk but no one answered. Their room was next to the stairway and they escaped down the stairs. In room 405, which was on the inside of the hotel, the tenant reached safety by climbing out of his window and lowering himself to the ground on a rope made of bedclothes he had tied together.

In room 403, which was also on the inside court, the plaintiff discovered the fire when she noticed that the room was uncomfortably warm. She opened the window and saw fire coming out of a nearby window.

She awakened Darby and opened the door. Fire and smoke hit her in the face. He pulled her back, closed the door, went to the phone and yelled that there was a fire and they were trapped. He made a makeshift rope out of sheets; tied it to the furniture and helped Miss Hampton out the window. After she lost her grip and fell, Darby went to the stairway and managed to get out of the hotel safely.

Both the hotel manager, Thomas, and the switchboard operator, Smith, had received desk clerk's certification from the Chicago Fire Prevention Bureau. As a pre-requisite, instructions were given them concerning the action to be taken in the event of a fire. They were taught that immediately upon learning of a fire they were to call the fire department and then alert the guests to keep them from panicking. Neither Thomas nor Smith complied with this procedure. After they were notified of the fire Thomas took the time to go to the fourth floor to check the accuracy of the report. Smith was indifferent to the report and undisturbed by the alarm. She waited until Thomas returned and confirmed the existence of the fire before she called the fire department or tried to notify the guests. The guests testified they became aware of the fire sometime between 7:30 and 8:00 A.M. The fire department was not informed until 8:10. Firefighters responded to the call at 8:13.

■■ The failure to contact the plaintiff and the conflicting testimony concerning the alarm raised the issue of whether the defendants were negligent in not warning her of the fire. The long delay in notifying the fire department and the casual attitude of the hotel employees supported her allegation that the defendants were negligent in not preventing the fire from spreading. The defendants were not entitled to judgment on either issue; both were properly submitted to the jury.

■■ The defense of contributory negligence was likewise a jury question. The defendants' contention in this regard is based on the proposition that if Darby was able to get out of the hotel by means of the stairs, the plaintiff could have done so. They state that in leaving the room the way she did she pursued "an obvious course of known danger when an alternative course of known safety was in fact available but steps away." The difficulty the plaintiff experienced in breathing made it necessary for her to leave the room; the fire and smoke in the hallway made exit by normal means seemingly impossible. She found herself in an extremely perilous position caused by an agency beyond her control. In such a situation a plaintiff need not exercise the same degree of coolness, self-possession and judgment necessary under ordinary circumstances. (*McLaren v. F. Byrd, Inc.* (1938), 296 Ill.App. 345, 15 N.E. 2d 993.) She must be judged by the standard of conduct of a prudent person acting under similar circumstances. (*Budds v. Keeshin Motor*

*Express Co.* (1945), 326 Ill.App. 59, 61 N.E.2d 579.) Apropos to this standard is the reaction of the tenant in room 405, the one next to the plaintiff's, who found it necessary to descend to the ground by means of an improvised rope which he had suspended from his window. That Darby came down the stairs safely is not controlling, for having seen the plaintiff falling from the window ledge and lying in the courtyard below he may have concluded that despite the fire in the hall the stairs afforded the only possibility of escape. He may have also rushed recklessly from the room in a desperate effort to lend assistance to his fiancee. The plaintiff's conduct fell far short of establishing contributory negligence as a matter of law. The defendants' prayer for an outright reversal on this and the previous assignment of error must be denied.

Their prayer for a new trial, however, is another matter. The defendants point to several alleged trial errors. The chief of these concerns an issue instruction which repeated all the allegations of the plaintiff's complaint. The averments which we deem pertinent charged that the defendants were negligent in failing to extinguish the fire, in not providing safe, suitable and proper means for leaving the hotel and in failing to provide assistance to the plaintiff so that she could leave the hotel safely.

■■ The defendants objected to these averments being repeated in the instruction because there was no evidence to support them and they imposed duties upon the defendants not demanded by law. The objections were well-founded. It was error to instruct the jury that the defendants could be found negligent for not putting out the fire. To permit a finding of liability because none of the employees used the fire extinguishers available in the hotel imposed a responsibility not warranted by the evidence. The fire department had instructed the resident manager that extinguishers were to be used only after the department was called and the guests notified. Prior false alarms arising from smoke in the halls caused by cooking mishaps inclined the manager and her fellow-employees to see if there really was a fire before they called the department and tenants. After they verified the fire's existence, further delay in calling the department—by attempting to fight the fire themselves—would have been unjustified. Even if the testimony of the employees is accepted rather than that of the tenants, the evidence indicated that the fire was beyond their control when they came upon it.

■■ That portion of the instruction which permitted the finding that the defendants were negligent in failing to provide a safe and suitable means for leaving the hotel was improper. There was no evidence that they did not furnish adequate stairways, elevators, fire escapes or doors and they were under no duty to maintain the plaintiff's upper-floor

window as an emergency exit. (*Dodd v. Nazarowski* (1972), 4 Ill.App.3d 173, 280 N.E.2d 540.) There was no evidence that they were negligent in the maintenance of these means of egress or that they violated any building ordinance in regard to the number, position or type of these exits. It is serious error to lead a jury astray by giving an instruction assuming there is evidence of a fact when there is none tending to prove such fact. *Woods v. Chicago Burlington & Quincy R.R. Co.* (1923), 306 Ill. 217, 137 N.E. 806.

■■ Instructing the jury that the defendants could be held liable if the jury found that they failed to provide assistance to the plaintiff so she could leave the hotel safely was also error. There was no responsibility on the defendants' part to provide private escorts to able-bodied tenants. If this ambiguous instruction meant that the defendants had the duty to provide directional signs or emergency instructions rather than to see that the occupant of each room was guided to safety by its employees, the evidence, again, was deficient. There was no testimony referring to this subject.

■■ In reaching its verdict the jury was not required to indicate upon what ground its finding of liability was based. When a general verdict is returned after the jury has considered several issues, some of which are supported and some unsupported by evidence, there may be a presumption that its verdict is grounded on those issues supported by evidence. (*Sims v. C.T.A.* (1955), 7 Ill.App.2d 21, 129 N.E.2d 23.) This presumption is apparently predicated on the proposition that the intelligence of the jurors enabled them to discriminate between the proved and unproved issues. (*Scott v. Parlin & Orendorff Co.* (1910), 245 Ill. 460, 92 N.E. 318.) However, other cases hold that this is the function of the court; that jurors, being laymen, are not trained to separate issues and to disregard irrelevant matters. There are numerous cases which hold that the giving of instructions not based on evidence is reversible error. (See *i.e., Jackson v. Hursey* (1954), 1 Ill.App.2d 598, 118 N.E.2d 348.) In determining whether to invoke the above presumption, a reviewing court must take into consideration the closeness of the evidence, the likelihood of the jury being confused and the possibility of prejudicial effect in submitting the unsupported issues to the jury. *Huckabee v. Bell & Howell, Inc.* (1968), 102 Ill.App.2d 429, 243 N.E.2d 317.

■■ The issues instruction was so phrased that the jury could presume that the defendants were negligent if they did not extinguish the fire or escort the plaintiff to safety. The instruction stated that the plaintiff claimed the defendants were negligent in failing to extinguish the fire and in failing to provide assistance to her in leaving the hotel. Obviously, the defendants failed to do these things, but they were not negli-

gent in not doing so. Under the facts of this case they were under no legal duty to put out the fire or escort the plaintiff from the hotel. Nonetheless, the instruction could have led the jurors to believe that because the defendants did not put out the fire and assist her to safety they could find in her favor.

■■ The standard burden-of-proof instruction magnified the impact of the erroneous issues instruction. It told the jury that in order to recover the plaintiff had to prove that the defendants failed to act in one of the ways claimed by her and that in failing to act they were negligent. Since two of the ways the plaintiff claimed the defendants failed to act breached no duty owed to her, it was misleading to instruct the jury that evidence of their failure to so act would satisfy her burden of proof.

■■ The defendants objected to the issues instruction at the conference on instructions and in their post-trial motion. The objections should have been sustained. The cause must be remanded for a new trial.

■■ Because of our remandment order, we will briefly discuss two of the defendants' other assignments of error. The plaintiff was permitted to call Ardeen Smith as an adverse witness under Ill. Rev. Stat., 1967, ch. 110, para. 60. Although her answers in her deposition could be construed as indicating that she was a managing agent of the defendants, her testimony at the trial revealed her duties were those of a switchboard operator and desk clerk. The resident manager of the hotel was Geraldine Thomas. On retrial Smith should not be examined under section 60 of the Civil Practice Act.

■■ Photographs of the Tivoli Hotel taken by the Fire Department during the fire were admitted into evidence over the defendants' objection. The pictures did not show the window from which the plaintiff fell nor the extent of the fire at that time, but they illustrated its progress and the damage it caused to the fourth floor. Admission of the pictures rested in the discretion of the trial court. As they may have assisted the jury in understanding the testimony, the court did not err in receiving them in evidence. *People v. Coleman* (1970), 127 Ill.App.2d 38, 261 N.E.2d 705; *Foster v. Bilbruck* (1959), 20 Ill.App.2d 173, 155 N.E.2d 366.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

McGLOON, P. J., and McNAMARA, J., concur.