Norman Dodd, Admr. of the Estate of Crystal Dodd, Deceased *et al.*, Plaintiffs-Appellants, *v.* Anna Nazarowski, Defendant-Appellee.

(No. 55011;

First District—February 22, 1972.

Head, Valentine, Purcell & Wardrope, of Chicago, (John T. Wardrope, of counsel,) for appellants.

O'Brien, Kerpec & Evans, of Chicago, (Donald J. O'Brien, Jr., and Dom J. Rizzi, of counsel,) for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

This was an action to recover damages for injuries sustained by Ruby Dodd, a minor, and for the death of Crystal Dodd, also a minor. Both the death and the injuries resulted from a fire which occurred in a building owned by the defendant. The matter was tried before a jury. At the close of plaintiffs' case the court directed a verdict for the defendant and against the plaintiffs, and judgment was entered on the verdict so returned. Plaintiffs appeal.

On July 19, 1966 defendant was the owner of a three-flat apartment building located at 1837 North Wolcott Avenue in Chicago. The building was a three-story structure and was located on the east side of Wolcott Avenue, facing in a westerly direction. Adjacent to the north side of the building was an alley and to the north of the alley was a school playground equipped with baseball facilities where children frequently played baseball. To the south of the apartment building was an empty lot.

The second floor apartment of the building was rented by Norman Dodd in February 1966, and was occupied by Dodd and his family, which included his wife, Betty Mae, and five children: Ruby, age 13; Tonga, age 9; Dwayne, age 5; Crystal, age 4; and Sherry, age 2. The apartment consisted of seven rooms, including three bedrooms and a bathroom which were situated on the north side of the building with windows overlooking the alley and the schoolyard. Access to the second floor apartment was provided by three stairway entrances: one from the front of the building into the living room; the second from the rear of the building; and the third from the south side of the building at a point across from the bathroom.

The first bedroom toward the front of the apartment was situated alongside the living room and was occupied by Ruby Dodd. The second bedroom from the front of the apartment was situated alongside the dining room and was occupied by Tonga, Dwayne and Crystal Dodd. The next room along the north side of the building was the bathroom. The third bedroom was located behind, or to the east of the bathroom and adjacent to the kitchen, and was occupied by Norman Dodd, his wife, and their youngest child, Sherry.

The windows of the second floor apartment along the north side of

the building were situated between ten and twelve feet above the alley. The first bedroom in the apartment contained a single window along the north wall of the building; that window was covered from the outside by a heavy steel screen permanently nailed to the window jamb. The second bedroom contained one large window and one small window; the large window was covered from the outside with a screen in a manner similar to that of the first bedroom window; the smaller window of the second bedroom was not covered. From photographs of the building it appears that several other windows along the north wall of the building were covered with screens in a fashion similar to that covering the second floor windows, but that windows along the front and the south side of the building were not covered by screens. It further appears that the screens covering the windows on the north wall of the building had been so affixed at the time the building was purchased by the defendant.

Sometime after 7:00 A.M. on July 19, 1966 a fire of undetermined origin broke out in the second floor apartment. Mrs. Dodd testified that her husband was at work at the time, that she heard Ruby Dodd, who was in the first bedroom, call out concerning the fire, and that the witness, who was asleep in the third bedroom, awoke, took hold of Sherry Dodd, and proceeded toward the front of the apartment. She testified that as she proceeded, she was unable to see due to the thick smoke. Mrs. Dodd testified that on her way toward the front of the apartment she swallowed smoke, that she heard a noise, that her back was burned, and that the next thing she knew she was outside the front door of the building. The witness further testified that outside the building she observed her husband's brother, Carl Dodd, standing in front of the building and that she then heard a noise sounding "like something blew up inside the house."

Mrs. Dodd testified that she then went to the alley north of the building and observed Ruby Dodd at the first bedroom window, hollering and beating on the screen covering the window. The witness testified that Carl Dodd attempted to pull the screen off the window jamb with his hands, but that he was unable to do so. She stated that shortly thereafter, neighbors came with a ladder and attempted to break through the screen, but that they broke the ladder in the process. Mrs. Dodd testified that someone succeeded in pulling the screen off the window to Ruby's room, and that Ruby was then helped out of the bedroom through the window. She testified that the firemen who had arrived at the scene sometime later removed her daughter, Crystal, from the second bedroom, and that both Ruby and Crystal were taken to hospitals. Mrs. Dodd

testified that Crystal died in the hospital four days after the fire and that Ruby remained in the hospital six weeks recovering from the injuries she received in the fire.

Mrs. Dodd testified that Tonga Dodd escaped from the second bedroom by jumping out the smaller, unscreened window of that room; that she did not know how Dwayne got out of the building; that she made no attempt to enter either the first or the second bedroom on her way out of the building; and that she did not call to any of the children in the bedrooms on her way out. The witness further testified that she and her husband had requested both the defendant and the janitor employed by the defendant to remove the screens from the windows on several occasions prior to the fire.

Carl Dodd, brother of Norman Dodd, testified that he was passing in front of the building in question on his way home from work and he noticed the second floor apartment on fire. He testified that he attempted to enter the building from the front but that he was forced back by heat and smoke. The witness heard an explosion and observed his sister-in-law standing in front of the building with two of her children, Dwayne and Sherry. The witness went to the south side of the building in an attempt to enter, but was again forced back by the heat and smoke. He then went to the alley side of the building where he observed Tonga Dodd at the small window of the second bedroom; the witness testified that he coaxed the girl into jumping from the window.

Carl Dodd further testified that he observed Ruby Dodd at the window of the first bedroom, hollering and pushing at the screen covering the window. He stated that he attempted to remove the screen with his hands by jumping from the alley floor to the window, but was unable to do so. The witness testified that some neighbors arrived with a ladder, and after considerable effort were successful in opening a hole in the screen and aiding Ruby out of the window.

Two of the neighbors who aided in the rescue of Ruby Dodd substantially corroborated the foregoing testimony concerning the actions of Ruby Dodd as she attempted to get out of the bedroom and concerning the difficulty of removing the screen from the window.

City of Chicago Fireman Robert Schmidt testified that when he arrived at the scene he was ordered into the second floor of the building through the third window from the front of the building, which was the screen-covered window of the second bedroom. He testified that he attempted to remove the screen with a "pike-pole," a device used by fire fighters to pull down plaster or to tear off screening. The witness testified that he was unsuccessful in removing the screen with the pole, and that he then employed his fire axe to effect its removal, striking five to ten

blows to cut through the screen. He stated that he then broke the window and found a small child (Crystal Dodd) in an unconscious state, crouched beneath the window. The witness handed the child out of the window to another fireman.

The defendant was called as a witness by the plaintiffs under Section 60 of the Civil Practice Act. The defendant testified that at the time she purchased the building from her son the screening on the windows on the north side of the building was already affixed, and that her son told her that the screening was on the building when he purchased it twenty years earlier. The witness testified that she did not know how many of the windows had screens on them. She further testified that she did not know the Dodds, that she never met them, and that she had never spoken to them over the telephone. She stated that the janitor whom she employed to maintain the building collected rents from the tenants, but that she also collected rents on occasion.

The amended complaint filed in this cause alleged negligence on the part of the defendant on essentially two grounds: (a) violation by defendant of her common-law duty as a landlord by preventing, precluding and obstructing escape or rescue through windows covered by permanently affixed screens and (b) violation by defendant of her statutory duty as prescribed by the Municipal Code of the City of Chicago relating to the condition of repair of windows, doors and hatchways and to the condition of hallways, fire exits, and the like. At the close of plaintiffs' case-in-chief, a colloquy ensued between the trial court and plaintiffs' counsel concerning the allegations in the amended complaint relating to the violation by defendant of her statutory duty. In pursuing the matter, plaintiffs' counsel represented to the court that he did not wish to jeopardize his case "in going to the Jury on issues involving violations of ordinances," that he did not think the ordinances were applicable, and that he was withdrawing the subparagraphs in the amended complaint relating to the violations of the ordinances in that they did not assert a cause of action.

■■ On appeal plaintiffs raise essentially the same matters as were alleged in the amended complaint, namely, the violation by defendant of her common-law and her statutory duties in maintaining windows covered by permanently affixed screens. As to the contention that defendant violated her duty prescribed by the ordinances of the City of Chicago, it need only be said that plaintiffs' counsel withdrew that ground of recovery from the amended complaint at trial and therefore that matter cannot now be raised on appeal.

■■ Plaintiffs further contend that defendant violated her common-law duty as a landlord. At common law, a landowner was not required to

178

anticipate a fire upon his premises; it was considered that the ordinary means of escape from a burning building were sufficient. (See *Yall v. Snow*, 201 Mo. 511, 100 S.W. 1, 2-3; *Arms v. Ayer*, 192 Ill. 601, 616.) In reversing a judgment in favor of a tenant against a landlord where the tenant was injured in escaping from a fire in the landlord's building, the reviewing court in the case of *Mazzu v. Darojo Realty Co., Inc.*, 3 N.Y.S.2d 90 stated at page 91 of that opinion, that the trial court "erroneously allowed the jury to predicate negligence on the defendant's violation of a common-law duty (irrespective of the building ordinances) to furnish proper exits. In our opinion, no such duty toward this plaintiff existed."

■■■ In the instant case the second floor apartment of defendant's building was serviced by three exit-entrances. There were other windows in the apartment which were not covered by screening. Further, there is no evidence that the windows of the first and second bedrooms were held out by the landlord to be fire exits. The fact that under a given and limited set of circumstances a person may attempt or wish to use a window as a means of egress from a building to escape a fire does not of itself place a duty on the landlord to maintain that window as a means of escape.

■■ It is argued by plaintiffs that the purpose of the screens over the windows on the north side of the building was to prevent breakage of those windows by baseballs emanating from the adjoining playground, but that such purpose cannot overshadow defendant's duty to maintain those windows as a means of egress in the event of a fire on the premises. If such was the reason why the screens were in fact placed on the windows, it is clear that the windows were not intended as a means of ingress and egress from the bedrooms, but rather were intended to provide only light and air. It is difficult to see how the maintenance of permanent screening over windows, to prevent breakage thereof, places a greater duty upon a landlord than if he had removed the windows on the north side of the building outright and replaced them with glass blocks for light and a small louver-type window for air.

■■ The sole case cited or found relating to the existence of a landlord's duty at common law to maintain windows for purpose of egress from a building during a fire is *Buckingham v. Donarry Realty Corp.*, 268 N.Y.S.2d 775. In *Buckingham* plaintiff was a tenant in a basement apartment having only a single door exit. Fire blocked that exit and plaintiff was injured attempting to flee through a window which apparently had been nailed shut. The New York reviewing court held that the use of a window to escape a fire which blocks an "only exit doorway may be found to be reasonably foreseeable * * *." In the instant case,

however, there is no evidence that the fire blocked the doorway of either the first or the second bedroom in the second floor apartment; there is evidence that the apartment was serviced by three doorway exits and that there were several unscreened windows in the apartment. The *Buckingham* case is not applicable to the circumstances of the case at bar.

Under the circumstances of this case, defendant was under no common-law duty to maintain the windows in the first and second bedrooms of the second floor apartment as a means of egress in case of fire, and the trial court properly directed a verdict for the defendant and against the plaintiffs. Plaintiffs' cases relating to the foreseeability of injury are inapplicable to the case at bar. See *e.g., Kahn v. James Burton Co.,* 5 Ill.2d 614.

For these reasons the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and LYONS, J., concur.