T.F., a Minor, by his Parent and next Friend, Cali R. Burke, Plaintiff-Appellant, v. JAMES GHIBELLINI, JR., *et al.*, d/b/a The Brass Rail Tavern, Defendants-Appellees.

Second District    No. 2—96—1152

Opinion filed July 9, 1997.

Constance Augsburger and Jenifer L. Johnson, both of Law Offices of Dennis Schumacher, P.C., of Mt. Morris, for appellant.

Raphael E. Yalden II, of Yalden, Olsen & Willette, of Rockford, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, T.F., appeals the trial court's order granting summary judgment in favor of the defendants. T.F. filed a complaint to recover damages under the Dramshop Act (235 ILCS 5/6—21 (West 1994)) for the loss to T.F.'s "means of support" caused by an intoxicated person. The trial court granted summary judgment on the basis that the decedent had never supported his son, T.F., prior to his death. On appeal, T.F. contends that the trial court's order is erroneous because there is a question of fact regarding whether a reasonable expectation of future support exists. We affirm.

The record shows that Cali Burke and Charles Andy F. (Andy) met each other in high school. After dating for awhile, Cali became pregnant and the relationship ended. Cali testified in a deposition that after the relationship ended she and Andy did not see or speak to each other.

On August 8, 1993, Cali gave birth to T.F. Cali said that, through a friend, Andy was made aware of T.F.'s birth. Andy did not pay any hospital bills related to the birth. Indeed, Cali testified that she never asked Andy to pay any of the bills and that Andy never provided any support for T.F. Further, Cali never requested any type of support for T.F. from Andy. When asked during her deposition why she did not demand support from Andy, Cali replied, "We never spoke."

After T.F. was born, Andy and Cali's relationship did not improve. Andy did not visit T.F. or baby-sit for T.F. In fact, Cali stated that to her knowledge T.F. was never even in the presence of Andy. Further, Cali said that she did not have any phone conversations with Andy after T.F.'s birth. Cali said that on one occasion she sent pictures of T.F. to Andy and his mother, but she did not get any response from Andy regarding the pictures. Finally, Cali admitted that she knows of no one who had any knowledge that Andy ever expressed a willingness to support or pay support for T.F.

On April 7, 1994, on behalf of T.F., the Illinois Department of Public Aid filed a petition, naming Andy as the respondent, to determine the existence of the father and child relationship. Andy appeared in court on May 9, 1994. Andy denied that he was T.F.'s father and told the court that he wished to hire an attorney. The circuit court ordered Andy to submit to blood tests to determine T.F.'s parentage, and the court continued the case to May 23, 1994.

On May 23, Andy appeared in court again. Andy stated that he still wished to hire an attorney but had been unable to do so. The court granted a "last continuance" to June 27, 1994.

On June 27, Andy appeared in court without an attorney. Andy informed the court that he had hired an attorney but that his at-

torney was unable to come to court that day. The court continued the case "generally awaiting the blood test results."

On August 15, 1994, Andy was killed while riding in a car driven by an intoxicated driver. The driver had previously drunk 12 to 15 beers at the Brass Rail Tavern, which was owned and controlled by the defendants.

Andy's blood sample was collected shortly after his death. According to a blood test conducted in November 1994, the probability of Andy's paternity of T.F. was 99.99%. On January 30, 1995, the circuit court entered an order declaring Andy the father of T.F. T.F. began receiving social security benefits due to the death of his father.

On August 8, 1995, T.F., through Cali, filed a complaint against the defendants pursuant to the Dramshop Act, seeking compensation for the loss to his means of support due to his father's death. The defendants subsequently moved for summary judgment on the basis that Andy was not a means of support for T.F. under the Dramshop Act. After a hearing, the trial court granted the defendants' motion on July 18, 1996. On appeal, T.F. argues that the court's ruling is erroneous because a genuine issue of material fact exists regarding whether Andy was a means of support for T.F.

■ Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bolingbrook Equity I Ltd. Partnership v. Zayre of Illinois, Inc.*, 252 Ill. App. 3d 753, 764 (1993). While plaintiffs need not prove their cases at the summary judgment stage, they must come forward with some facts that would arguably entitle them to judgment. *Jones v. Minster*, 261 Ill. App. 3d 1056, 1059 (1994). Indeed, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Therefore, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard*, 154 Ill. 2d at 102. Finally, our review of the trial court's entry of summary judgment is *de novo. Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

■ Under the Dramshop Act, recovery is justified on the theory that a person actually contributing support prior to the time of death would likely have continued such support had he or she lived. See *Robertson v. White*, 11 Ill. App. 2d 177 (1956). Accordingly, it is well settled in Illinois that one cannot establish loss to means of support when the decedent had actually provided no support prior to the time of his death. *Angeloff v. Raymond*, 70 Ill. App. 3d 594, 596 (1979).

In this case, it is undisputed that Andy never provided support to T.F. Indeed, Cali testified that she never asked for support and that Andy never provided any support to T.F. Further, Cali acknowledged that Andy never told her that he would provide support for T.F. in the future. Consequently, as the facts undoubtedly establish that Andy never supported T.F., T.F.'s action for recovery under the Dramshop Act must fail. See *Angeloff*, 70 Ill. App. 3d at 596.

T.F. acknowledges the holding in *Angeloff*, but insists that the facts in that case are distinguishable from the case at bar. Specifically, T.F. asserts that in *Angeloff* there was no court order requiring the decedent to provide support. T.F. argues that in the instant case legal proceedings were pending to require Andy to provide support. Therefore, this court should not apply *Angeloff* to the case at bar, but instead should rely on *Judy v. Day*, 68 Ill. App. 3d 156 (1979), and *Thompson v. Tite*, 214 Ill. App. 3d 1096 (1991). T.F. claims that *Judy* and *Thompson* stand for the proposition that, when court orders exist requiring the decedent to pay support, a decedent's not providing actual support at the time of his death does not negate recovery under the Dramshop Act. We disagree.

In *Judy*, the decedent provided support for his son during his marriage to the son's mother and after he and his son's mother were divorced. Shortly after the divorce, the son's mother went to California with her son against court order and without telling the decedent their whereabouts. The decedent subsequently stopped paying support and filed an action seeking to retain custody of his son. At a hearing, the court granted custody of the son to the decedent. Less than two weeks after the custody decree, the decedent was killed in an automobile accident after becoming intoxicated. The administrator of the decedent's estate then filed an action for loss to means of support for the decedent's son pursuant to the Dramshop Act. *Judy*, 68 Ill. App. 3d at 157-58.

The *Judy* court held that the decedent's son could recover under the Dramshop Act. The *Judy* court explained that, although the decedent was not providing support at the time of his death, a reasonable expectation of future support existed. The court stated that the decedent had supported his son in the past and that his ceasing payments was not unreasonable under the circumstances of the case. Further, the evidence showed that the decedent had taken action to retain custody of his son, and from that action a reasonable inference could be drawn that he had planned to support him. Accordingly, recovery for a loss to means of support was proper. *Judy*, 68 Ill. App. 3d at 159-60.

Similarly, in *Thompson* the decedent paid child support for eight

years. Then, the court raised the amount of support due monthly, and the decedent stopped making regular payments. Seven years later, the decedent's ex-wife filed a petition for rule to show cause. Two weeks later, an intoxicated individual shot and killed the decedent. Subsequently, the decedent's children filed an action for recovery of loss to means of support under the Dramshop Act. *Thompson*, 214 Ill. App. 3d at 1097.

Like the *Judy* court, the *Thompson* court found that the children could recover under the Dramshop Act. The court explained that the decedent had provided support to his children for eight years. Then, the court stated that the decedent's not paying support at the time of his death was not conclusive of whether there was a reasonable expectation of future support. Accordingly, the *Thompson* court reversed the trial court's order of summary judgment and remanded the case for trial on the issue of whether the decedent's children's loss to means of support was caused by an intoxicated person. *Thompson*, 214 Ill. App. 3d at 1098.

We find that the rulings in *Judy* and *Thompson* are consistent with the rule enunciated in *Angeloff* that to recover for loss to means of support, a plaintiff must establish that the decedent provided support at some point before his or her death. Unlike in the case at bar, the issue in *Judy* and *Thompson* involved whether the plaintiffs could prove that a reasonable expectation of *future* support existed. Indeed, we note that the *Thompson* court even stated that the Dramshop Act requires a plaintiff to "prove actual support prior to the injury or death *and* prove that this support would have continued but for the injury." (Emphasis added.) *Thompson*, 214 Ill. App. 3d at 1098.

In other words, obtaining recovery under the Dramshop Act is a two-step process. First, the plaintiff must show that the decedent provided actual support prior to his death. Second, the plaintiff must demonstrate that there was a reasonable expectation that this support would have continued but for the decedent's death. See, *e.g., Angeloff*, 70 Ill. App. 3d 594.

In *Judy* and *Thompson*, the courts found that the plaintiffs met the first part of this test as the decedent in each case had, at some point in time, provided support. Accordingly, the *Judy* and *Thompson* courts reached the next issue of whether a reasonable expectation of future support existed. In discussing this issue, each court examined the importance of a decedent's providing "actual present support" in showing the potentiality of future support. See *Judy*, 68 Ill. App. 3d at 159; *Thompson*, 214 Ill. App. 3d at 1098.

■ In this case, there is no dispute that the decedent never provided support to his son. As a result, the plaintiff cannot meet the

first part of the test and the issue of whether there was a reasonable expectation of future support is not reached. Consequently, the instant case is more similar to *Penoyer v. Hare*, 76 Ill. App. 3d 225, 227 (1979), than it is to either *Judy* or *Thompson*.

In *Penoyer*, the wife of the decedent filed an action under the Dramshop Act seeking recovery for loss to means of support. At the time of his death, the decedent operated a truck stop and worked on a farm owned by his parents. The decedent, however, had not been furnishing support to his wife or his children. The *Penoyer* court explained that loss to means of support requires a finding that the person injured rendered support and " 'that no damage award can be based on a future potentiality of support not presently provable.' " *Penoyer*, 76 Ill. App. 3d at 227, quoting *Shiflett v. Madison*, 105 Ill. App. 2d 382, 387 (1969). Consequently, as the decedent had not furnished support to his wife and children prior to his death, the *Penoyer* court found that the plaintiff could not recover for loss to means of support. *Penoyer*, 76 Ill. App. 3d at 227.

Likewise, T.F. cannot meet the first step of the test for recovery under the Dramshop Act because the decedent never provided support before his death. Although legal proceedings were under way regarding T.F.'s paternity and Cali requested the court to enter an order requiring Andy to pay support, the fact remains that the decedent never provided support before his death. Therefore, as the first part of the test has not been met, it is not necessary to reach the second part of the test involving the expectation of future support.

For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

THOMAS and RATHJE, JJ., concur.