VINCENT BARTELLI, Plaintiff-Appellant, v. EDWARD O'BRIEN, Defend-
ant-Appellee.

Second District   No. 2—98—0460

Opinion filed September 29, 1999.

McLAREN, J., specially concurring.
GEIGER, J., dissenting.

Rene Hernandez, of Belvidere, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, P.C., of Peoria, and Douglas J. Pomatto and Charles D. McCann, both of Heyl, Royster, Voelker & Allen, P.C., of Rockford, for appellee.

JUSTICE GALASSO delivered the opinion of the court:
Plaintiff, Vincent Bartelli, appeals from the trial court's order granting summary judgment in favor of defendant, Edward O'Brien. On February 6, 1997, plaintiff filed a one-count complaint against defendant, alleging that defendant was negligent in failing to prevent a fire, which originated on defendant's property, from causing damage to plaintiff's adjacent property. Subsequently, plaintiff filed an amended complaint nearly identical to the original complaint. Defendant filed a motion for summary judgment, arguing that he owed no duty to plaintiff and that there was no proximate causation attributable to defendant's actions. After briefing and arguments, the trial court entered an order granting the motion for summary judgment. Plaintiff filed a motion to reconsider, which was denied by the trial court. This timely appeal followed.

Before this court, plaintiff argues (1) that the trial court's orders are insufficient as a matter of law; (2) that the trial court erred in finding that defendant had no duty to plaintiff; and (3) that defendant's actions were the proximate cause of the fire that damaged plaintiff's property.

Plaintiff's amended complaint made the following allegations. Plaintiff owned a "saloon" (Saloon) in Belvidere, Illinois. Defendant's hotel (Hotel) "was located adjacent and next to the 'Saloon.' " The amended complaint further alleged that defendant had a duty to exercise ordinary care at all times to prevent the spread of fire from

the Hotel to the Saloon and other adjacent properties. The amended complaint averred that this duty included installing and maintaining in the Hotel an automatic sprinkler system, a fire warning system, smoke detectors, and fire extinguishers. On December 1, 1994, a fire was started in a room in the Hotel. The fire quickly grew, and Hotel customers attempted to extinguish the fire but were unable to do so "with faulty and non-serviceable fire extinguisher(s)." The plaintiff further alleged the fire department did not receive notice until the fire was out of control.

Despite his alleged duties, defendant was:

"then and there guilty of committing one or more of the following careless and negligent acts or omissions:

(a) carelessly and negligently failed to install and maintain an automatic sprinkler system at the 'Hotel' pursuant to Section F—503.0 of the [Building Officials and Code Administrators] [(]BOCA[)] National Fire Prevention Code of 1993, as adopted and enforced by the City of Belvidere at the time of the alleged incident;

(b) carelessly and negligently failed to place fire extinguisher[s] in easy [sic] accessible areas;

(c) carelessly and negligently failed to maintain fire extinguisher[s] in proper working condition pursuant to Section F—509.0 of the BOCA National Fire Prevention Code of 1993, as adopted and enforced by the City of Belvidere at the time of the alleged incident;

(d) carelessly and negligently failed to install smoke detectors in each guest room pursuant to Section F—503.4 of the BOCA National Fire Prevention Code of 1993, as adopted and enforced by the City of Belvidere at the time of the alleged incident;

(e) carelessly and negligently failed to keep existing smoke detectors in proper working condition pursuant to Section F—513.7 of the BOCA National Fire Prevention Code of 1993, as adopted and enforced by the City of Belvidere at the time of the alleged incident;

(f) was otherwise careless and negligent in his conduct."

The amended complaint further alleged that, as a direct and proximate result of these negligent acts, the Hotel was completely destroyed and the Saloon was extensively damaged. As a further direct and proximate result of defendant's negligence, plaintiff was unable to operate his Saloon for at least seven months and incurred loss of revenue and "other injuries of a pecuniary nature."

In his motion for summary judgment, defendant initially argued (1) that at common law a landowner has no duty to provide fire detection or prevention equipment on his premises where no statute indicates otherwise; (2) that plaintiff does not fall within the class of persons protected by the BOCA National Fire Prevention Code of 1993; and (3) that, accordingly, defendant owed no duty to plaintiff as alleged in the amended complaint.

As to proximate cause, the motion for summary judgment contended that plaintiff had failed to establish that the alleged acts and omissions were reasonably connected to his damages. Further, defendant maintained that the proximate cause of the subject fire was the intentional action of Pam Spittler, a tenant at the Hotel, not the alleged negligent actions or omissions of defendant. Defendant attached documents regarding Spittler's being charged with and convicted of felony murder for committing arson at the Hotel that resulted in the death of Jeffrey Lawton.

Subsequently, the trial court granted defendant's motions for summary judgment and later denied plaintiff's motion to reconsider. The trial court did not elaborate in either order on the reason(s) for its determinations.

■ We will first address the defendant's argument that, because plaintiff's motion for reconsideration failed to comply with the requirements for a valid motion for reconsideration, it did not toll the time within which plaintiff had to file a notice of appeal. Defendant then points out that plaintiff's notice of appeal was not filed within 30 days of the entry of the order granting summary judgment. He argues that this appeal must be dismissed for lack of jurisdiction. We do not agree with defendant's assessment of the motion for reconsideration. The subject motion clearly contends that the trial court erred in applying the law, which is one of the bases for a valid motion for reconsideration. *Continental Casualty Co. v. Security Insurance Co.*, 279 Ill. App. 3d 815, 821 (1996). As a result, we do not find defendant's argument persuasive.

We will next address the plaintiff's argument that the trial court's orders are insufficient as a matter of law. Plaintiff maintains that the trial court has an obligation to put the parties on notice as to the basis of its ruling and that the subject orders give no indication as to the bases of its decisions. It is noteworthy that plaintiff cites no authority to support this contention. Nor did plaintiff ask the trial court to set out its findings of fact and determinations of law. Moreover, it is apparent that the trial court agreed with the principal argument made by defendant, namely, that he owed no duty to plaintiff and that, as a matter of law, he was entitled to summary judgment. While the trial court's failure to state its reasons for granting summary judgment is somewhat problematic, based on this record we do not see that plaintiff was significantly disadvantaged by the lack of reasons set out in the trial court's orders.

Based on this record, we conclude that the trial court found that no duty existed and, thus, did not address the issues of breach of duty and proximate cause. Accordingly, we will address only the issue of whether a duty existed in this situation.

■ In the case of *T.F. v. Ghibellini*, 289 Ill. App. 3d 824 (1997), this court set out the relevant standard of review:

"Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. [Citation.] While plaintiffs need not prove their cases at the summary judgment stage, they must come forward with some facts that would arguably entitle them to judgment. [Citation.] Indeed, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. [Citation.] Therefore, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied. [Citation.] Finally, our review of the trial court's entry of summary judgment is *de novo.*" *Ghibellini*, 289 Ill. App. 3d at 826.

Moreover, on a motion for summary judgment, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in the nonmovant's favor. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993).

The plaintiff maintains that the trial court erred in granting the motion for summary judgment, and, by implication, in finding that defendant owed no duty to plaintiff to take reasonable measures to prevent the spread of fire from the Hotel to adjacent buildings. He argues that defendant owed him a duty to exercise ordinary care to prevent the spread of fire from the Hotel to adjacent buildings because (1) the injury was foreseeable, and (2) such a duty imposes little burden on defendant, who had the legal responsibility of installing automatic sprinklers, fire extinguishers, smoke detectors, and a fire warning system in the Hotel. In response, defendant contends that he has no common-law duty to plaintiff. He specifically maintains that (1) a landowner does not owe a duty to guard against injury occurring off his land; (2) a landowner does not owe a duty to an adjoining landowner with respect to criminal acts of third persons occurring on the landowner's property; and (3) the existence of a statute or ordinance does not enlarge the class of persons to whom a duty is owed.

■ Generally, to state a cause of action for negligence, a complaint must allege facts sufficient to show the existence of a duty, a breach of that duty, and an injury to the plaintiff that is proximately caused by that breach. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 45 (1991). Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for plaintiff's protection. *Puttman v. May Excavating Co.*, 118 Ill. 2d 107, 116 (1987). Whether a duty exists

in a particular case is a question of law for the court to determine. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). Our supreme court has observed that "the concept of duty in negligence cases is very involved, complex and indeed nebulous." *Mieher v. Brown*, 54 Ill. 2d 539, 545 (1973). The elements of the common-law duty analysis include the foreseeability and likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 82 (1988). The issue of whether there is a duty is broad in its implication, while the issue of whether there was negligence is confined to the particular case. *Swett*, 169 Ill. App. 3d at 82. Such a question is properly addressed by the court on a motion for summary judgment. *Morgan v. 253 East Delaware Condominium Ass'n*, 231 Ill. App. 3d 208, 212 (1992).

The record does not contain the BOCA Fire Prevention Code 1993 (Code) or the pertinent Belvidere ordinance(s). The appendix of defendant's brief does contain a copy of one page of the Code. The Code, which was allegedly adopted and enforced by Belvidere, serves as the basis of some of the plaintiff's allegations of negligence. The instant record's lack of documentary evidence regarding both the Code and the ordinances makes it impossible for this court to include them in its analysis of the issue of whether defendant had a duty to plaintiff. Thus, we will not address any portions of plaintiff's argument that rely on either the Code or the ordinances.

■ To determine the issue of whether defendant had a duty to plaintiff, we first must consider whether it was reasonably foreseeable that the condition of defendant's Hotel would result in a fire that would spread to an adjacent structure. In *Cunis v. Brennan*, 56 Ill. 2d 372 (1974), our supreme court discussed the nature of foreseeability as it applies to negligence cases:

"[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable, as the plaintiff contends; it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. Negligence as defined in the Restatement (Second) of Torts (1965), section 282, is conduct which falls below the standard established for the protection of others 'against unreasonable risk of harm.' Harper and James, in their Law of Torts, observe: 'Not what actually happened, but what the reasonably prudent person *would then have foreseen as likely to happen*, is the key to the question of reasonableness.' [Citation.] And Prosser [citation] comments: 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur

that the risk, although recognizable, would commonly be disregarded.' In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight. We will not look back, as it was felicitously put by Justice Cardozo, 'at the mishap with the wisdom born of the event ***.' [Citation.] But courts will be retrospective for another purpose. Section 435(2) of the Restatement (Second) of Torts (1965) provides: 'The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.' " (Emphasis in original.) *Cunis*, 56 Ill. 2d at 375-76.

Plaintiff argues that a hotel fire is a "very foreseeable event." He maintains that it is reasonable for a hotel owner to view his hotel as susceptible to a fire based upon the fact that multiple guests are in his hotel and that any one of them can cause a fire by accident or other conduct. Plaintiff also contends that it was foreseeable that a fire started in the Hotel could spread to the immediately adjacent Saloon. In response, defendant does not specifically discuss the foreseeability of a hotel fire that damages adjacent property. Instead, defendant argues that, at common law, a landowner does not owe a duty to guard against injury occurring off his land and that a landowner does not owe a duty to an adjoining landowner with respect to criminal acts of third persons occurring on the former's property.

At the risk of stating the obvious, the danger of fire is foreseeable in virtually any context. In the context of a hotel, where numerous guests and employees are involved, a fire started either by accident or by an intentional action is eminently foreseeable. Further, it is foreseeable that, in a hotel where there are inadequate or inoperative smoke detectors and fire extinguishers, a fire could move unchecked throughout the structure to the point where it would spread to buildings immediately adjacent to it before firefighters could arrive or despite their arrival. Accordingly, given the record before us, we find that the start and the spread of the subject fire in the Hotel and the subsequent spreading of the fire to the Saloon because of the allegedly inoperable fire extinguishers were foreseeable.

Moreover, not only was the occurrence of a fire starting in the Hotel and spreading to nearby buildings foreseeable, but also the likelihood of an injury under these circumstances was substantial. Plaintiff also argues that the magnitude of the burden of guarding against a fire was not substantial. We agree. The installation and maintenance of smoke detectors and fire extinguishers in the Hotel

would not require the kind of constant vigilance that has been found too burdensome by the courts. See, *e.g.*, *Lance v. Senior*, 36 Ill. 2d 516, 518-19 (1967). The burdens imposed by having the subject equipment in place and in working condition, *i.e.*, those related to financial cost and degree of vigilance, would not appear to be too onerous to defendant.

We conclude that the defendant landowner did not owe a duty to occupiers of his or her land and adjacent owners or occupiers to prevent the spread of fire by use of equipment that is available. However, when the landowner provides equipment to extinguish a fire, the landowner creates a duty to maintain the equipment so that it can be used for its intended purpose. The failure to do so raises fact issues of foreseeability and fact issues of whether or not properly maintained equipment would have prevented the spread of fire to the plaintiff's adjacent property. Such questions of fact preclude the entry of a summary judgment.

A case cited by plaintiff that provides support for our conclusion is *Aetna Insurance Co. v. 3 Oaks Wrecking & Lumber Co.*, 65 Ill. App. 3d 618 (1978). There, a building that was being demolished caught fire and damaged two nearby buildings. Evidence presented at trial indicated it was industry custom to lock up buildings that were in the course of being demolished. Typically, windows would be boarded up and doors nailed shut. The last superintendent leaving the job each night had the duty to see that the doors and openings to the building were locked up. There was no testimony that the building was actually locked prior to the fire. A witness testified that security was necessary because of the character of the neighborhood, which was located near "south skid row." Further, hoboes, who rode the trains out of the nearby Illinois Central Railroad yard, tried to get into abandoned buildings in the area. The hoboes would smoke and cook meals in the buildings "if they could." On one occasion, scavengers had entered the building and removed some copper. Containers of acetylene and oxygen, fuel for the acetylene torches, were on the premises under lock and key. However, there was testimony that "it would not take much for a professional thief" to break into the area where these containers were stored. Of the approximately 20,000 buildings demolished by the defendant only 2 or 3 had been damaged by fire. There was also testimony that transients had been getting into the building next door and making fires in it.

Further, a fireman testified that he worked at a fire station that was located very near the subject building. He stated that it was the fire department's policy to check for hazards in buildings undergoing demolition so that firefighters "would not get hurt in the event there

was a fire at night." *Aetna*, 65 Ill. App. 3d at 622. The fireman testified that he made regular checks of the building after demolition activity had ceased for the day. He stated that he was able to enter the building by simply opening a door and walking in. There was no lock or hasp on the door. His last inspection of the building occurred three or four days before the fire.

On appeal, the defendant argued that as a matter of law it owed no duty to the plaintiffs. The *Aetna* court first noted that the circumstances of the case could "hardly be considered extraordinary or bizarre." *Aetna*, 65 Ill. App. 3d at 623. The *Aetna* court then discussed the character of the neighborhood, the presence of hoboes and scavengers, and the trouble in the building next door, where transients had been making fires. *Aetna*, 65 Ill. App. 3d at 623. It concluded that the evidence did not support the defendant's claim that no duty existed because it had not been shown "that there was an unreasonable danger or an unreasonable risk of harm and that this occurrence was only a remote possibility or mere possibility." *Aetna*, 65 Ill. App. 3d at 623. Further, the *Aetna* court dismissed the defendant's argument that the subject fire was not foreseeable. *Aetna*, 65 Ill. App. 3d at 623.

Similar to *Aetna*, where there was evidence that defendant failed to lock a door in the building, the instant appeal involves a situation in which the relatively minimal precautions of smoke detectors, fire extinguishers, and a fire warning system allegedly were not employed to lessen the risk of injury. Of further significance is that the *Aetna* court found that a duty existed despite the fact that only a small number of the buildings demolished by defendant had caught fire.

Despite having found that a duty existed, we nevertheless think it is useful to address the two primary arguments raised by defendant. He first maintains that the common law holds that a landowner does not owe a duty to guard against injury occurring off his land and cites *Ziemba v. Mierzwa*, 142 Ill. 2d 42 (1991), for support of this contention. In that case, the defendant owned property that abutted Riverdale Road. The defendant's property included an unmarked driveway, which was not visible to traffic on the road due to foliage growing on the defendant's property. The plaintiff was riding his bicycle along Riverdale Road when a dump truck driven by a codefendant exited the defendant's driveway onto the road and struck the plaintiff.

Contrary to defendant's depiction of it, *Ziemba* does not stand for a blanket rule that a landowner does not owe a duty to guard against injury occurring off his land. Rather, the determination of whether such a duty exists must be made on the basis of the particular facts of the case at bar. *Ziemba*, 142 Ill. 2d at 47.

Further, in *Ziemba*, the court emphasized that the foliage was not

alleged to have prevented the driver from seeing oncoming traffic on Riverdale Road. It also opined that the conditions complained of, *i.e.*, the foliage and driveway, were not dangerous on their own. They only became dangerous, if at all, by the addition of a vehicle exiting onto Riverdale Road. The supreme court further noted that the complaint's allegations of negligence by the truck driver amounted to violations of a driver's statutorily imposed standard of care. The *Ziemba* court then stated, ''Because the condition was not dangerous, absent this negligent act of the driver, the accident is a reasonably foreseeable result of the condition on defendant's land, only if it was reasonably foreseeable that the driver would violate his statutory duties when pulling out of defendant's driveway.'' *Ziemba*, 142 Ill. 2d at 50. The supreme court then concluded that the defendant could not reasonably have foreseen that a driver would exit the driveway without first ascertaining whether any traffic was approaching on Riverdale Road. The court also found that, under those circumstances, the imposition of a duty would require the defendant to guard against the negligence of others, which is a considerably higher burden than guarding against dangers created solely by conditions on his land. The *Ziemba* court further reasoned that its determination of no duty was supported by policy considerations. It stated that the underlying rationale for holding a landowner liable for injuries occurring as a result of conditions on his land is that the landowner is in the best position to prevent the injury. *Ziemba*, 142 Ill. 2d at 53. It concluded that the driver was in the best position to prevent the injury and, thus, the usual rationale for imposing a duty on a landowner was not present.

In contrast to *Ziemba*, the issue of foreseeability in the instant appeal relates to the actions, or lack thereof, of defendant rather than a third party. Here, we have found that the condition of defendant's Hotel, without proper working fire detection and firefighting equipment, was dangerous, given the substantial risk of fire in such a structure. Moreover, unlike *Ziemba*, we have determined that the burdens that would have been imposed on defendant by having the aforementioned equipment on his property were not so great as to negate the existence of a duty. Finally, while the *Ziemba* court concluded that someone other than defendant was in the best position to prevent the injury, we have found that defendant was in the best position to prevent the injury in this case.

Defendant additionally maintains that he did not owe a duty to plaintiff because Illinois courts generally do not impose a duty to protect others from criminal acts by third persons. Specifically, defendant asserts that he was under no duty to take measures to guard against the act of arson that started the Hotel fire.

There is little doubt that defendant had no duty to protect others from the act of arson that started the subject fire. See, *e.g., Hill v. Charlie Club, Inc.*, 279 Ill. App. 3d 754, 758 (1996). Such a duty would simply place too great a burden on defendant. However, that is not the issue raised by plaintiff, who, as indicated above, argues that the negligence involved here was defendant's failure to exercise ordinary care to prevent the spread of fire from the Hotel, not his failure to prevent the arson. Smoke detectors and fire extinguishers are put in place to deal with fires that are started in all conceivable ways, *e.g.*, lightning striking the Hotel, faulty electrical wiring, a cigarette carelessly placed, or, as in the present case, arson committed by one of the Hotel's guests. In the context of the instant appeal, the way in which the fire started made little difference. Rather, of primary importance was the manner in which defendant attempted to contain *any fire* starting on the Hotel premises. Thus, the defendant's argument is not well taken.

Further, we note that defendant briefly argues that a landowner has no duty to provide fire detection or fire prevention equipment on his premises. The cases cited in support of that assertion involve landlord and tenant relationships. See *Webster v. Heim*, 80 Ill. App. 3d 315, 317 (1980); *Galayda v. Penman*, 80 Ill. App. 3d 423, 426 (1980). As such, those cases are factually distinguishable from the instant appeal and do not hold that a landowner owes no duty to adjacent landowners to exercise ordinary care in preventing the spread of fire to neighboring structures. Thus, they are not persuasive in this situation.

For the reasons stated above, we find that, under the particular facts of the instant appeal, defendant had a common-law duty to use reasonable means to prevent the spread of fire from his Hotel to adjacent structures. Accordingly, the judgment of the circuit court of Boone County is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JUSTICE McLAREN, specially concurring:
I specially concur because I believe the BOCA National Fire Prevention Code of 1993 (BOCA Code) under its own terms "shall be construed to secure its expressed intent, which is to ensure *public safety, health, and welfare* insofar as they are affected by conditions which cause fire or explosion and panic resulting therefrom; and, in general, to secure safety to life and property from fire hazards incident to the occupancy and maintenance of structures or premises."

666

(Emphasis added.) BOCA Code of 1993 § F—101.5 Intent. The BOCA Code contains references that indicate that the code is designed to protect the public welfare, reduce fire hazards generally, reduce fire hazards to adjoining property, and require minimum standards to reduce the danger of one of the most volatile hazards known to man. See BOCA Code § F—110.3 Unsafe conditions (referencing public welfare); BOCA Code § F—301.1 Scope for precautions against fire and the spread of fire; § F—403.5 Location (open burning) ("The location for any *open burning* [(emphasis in original)] shall not be less than 50 feet (15240 mm) from *any* structure, and provisions shall be made *to prevent the fire from spreading to within 50 feet* (15240 mm) *of any structure*. Fires in approved containers shall be permitted, provided that such fires are not less than 15 feet (4572 mm) from *any* structure" (emphasis added)); BOCA Code § F—1802.6.5 Building Clearances (oil and gas production) ("A sump or other basin for the retention of oil or petroleum products shall not be closer than 250 feet (76200 mm.) *to any building* that is not necessary for the operation of the well" (emphasis added)); BOCA Code § F—1904.4 Drainage (organic coatings) ("Drainage facilities shall be provided *** where *** *flammable* and *combustible liquids* [(emphasis in original)] are capable of flowing *** so as to constitute a *fire hazard to premises of other persons*" (emphasis added)); BOCA Code § F—2302.1 Definitions: Detached storage structure ("A *** structure *** utilized for the storage of *hazardous materials* [(emphasis in original)] and located an *approved distance from all structures*" (emphasis added)); BOCA Code § F—2315.4.2 Overflow ("Overflow from the secondary containment system shall be provided to direct liquid leakage and fire protection water to a safe location away from the structure, control valves, *means of egress* [emphasis in original], *fire lanes*, adjoining property or public sewers" (emphasis added)); BOCA Code § F—3504.2.1 Distance from storage to exposures ("Outside storage of *irritants, sensitizers,* and other *health hazards* [(emphasis in original)] shall be located 25 feet (7620 mm.) or more from *any lot line, public way, exit discharge or exterior wall opening*" (emphasis added)).

The plaintiff alleged that the defendant violated section F—503.1 requiring fire protection systems, including, *inter alia,* automated sprinkler systems. The plaintiff further alleged the defendant failed to place smoke detectors in each room, a violation of section F—503.4, and failed to keep said smoke detectors in proper working condition, a violation of section F—513.7. The plaintiff also alleged that the defendant failed to maintain fire extinguishers in proper condition, a violation of section F—509.0, Halogenated Extinguishing Systems.

The authoring justice concludes that the record is insufficient to

consider the merits of whether a duty or duties exist under the BOCA Code. A trial court is required to take judicial notice of an ordinance once brought to its attention. *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 157 (1992). The violation of an ordinance designed to protect human life or property is *prima facie* evidence of negligence; to recover, a plaintiff need only establish that he was within the class of persons to be protected by the ordinance and that the violation of the ordinance proximately caused his injury. *Ralls*, 233 Ill. App. 3d at 157. The appellate court may take judicial notice of matters not of record. See *Nameoki Township v. Cruse*, 155 Ill. App. 3d 889, 895 (1987); *Village of Glen Ellyn v. Fujinaga*, 190 Ill. App. 3d 584, 586 (1989). However, judicial notice need not be taken if the document is not accessible. *Faustrum v. Board of Fire & Police Commissioners*, 240 Ill. App. 3d 947, 950 (1993). I obtained a copy of the BOCA Code from the reference desk of the Wheaton Public Library. Additionally, there are several editions of the BOCA Code at the Du Page County Law Library. I believe this court can and should consider the merits of the plaintiff's BOCA Code contentions.

The question to be resolved is whether or not the plaintiff is within the class of persons to be protected by the ordinance. I believe the answer is yes. A fair reading of the BOCA Code indicates that it is primarily concerned with the prevention and spread of fire and other dangerous materials both on and off premises. The very nature of fire is that it is not easily extinguished or contained once it reaches a certain stage or level of intensity. Some regulations are designed to require the authorities to be notified quickly so that response time is minimal and attempts to control and extinguish the fire are successful. Some regulations are designed to prevent fires from starting. Some regulations are designed to have firefighting equipment available so as to control or extinguish the fire as quickly as possible. Some regulations are designed to prevent the spread of fire to other structures and other premises.

Whether any or all of these regulations were relevant and material to the issue of proximate cause is an issue of fact. However, I consider it *un*reasonable to conclude that an adjoining landowner is *not* a person in the class of persons whose interests, property, and safety are considered and affirmatively affected by the BOCA Code.

Accordingly, the plaintiff has sufficiently alleged a *prima facie* case. Thus, the plaintiff now should be given the opportunity to prove that the negligence of the defendant was *a* proximate cause of the plaintiff's injuries.

JUSTICE GEIGER, dissenting:

I respectfully dissent. I do not believe that a landowner has a common-law duty to install and maintain smoke detectors and fire extinguishers in order to reduce the possibility that a fire starting upon his premises will spread to an adjacent property. I also do not believe that a landowner must protect an adjacent landowner from injury arising out of an intentional act of arson.

At common law, a landowner was not required to anticipate a fire upon his premises. *Dodd v. Nazarowski*, 4 Ill. App. 3d 173, 177-78 (1972). Therefore, in the absence of some statute, rule, or regulation, a landowner is not obligated to maintain fire prevention and safety equipment. See *Galayda v. Penman*, 80 Ill. App. 3d 423, 426 (1980) (landlord not obligated to install alarm or detection system for fire); *Webster v. Heim*, 80 Ill. App. 3d 315, 317 (1980) (landlord had no duty to occupant of property to provide fire exits, smoke detectors, or fire doors). Although this body of case law has been most often applied in the context of landlord and tenant relationships, I am aware of no authority that limits its application to these situations. Indeed, it would seem illogical to hold that a landowner would owe a greater duty to an adjoining property owner than he would owe to the occupants of his own land.

The authoring justice's opinion would therefore seem to be in direct contradiction to the common law. See *Dodd*, 4 Ill. App. 3d at 177-78. The opinion fails to address this conflict or explain its abandonment of such traditional common-law principles. Nor does the opinion offer any compelling authority in support of its assertion that the common law holds an innkeeper to a higher standard than a landlord or any other landowner.

The authoring justice's reliance upon *Aetna Insurance Co. v. 3 Oaks Wrecking & Lumber Co.*, 65 Ill. App. 3d 618 (1978), in support of his conclusion is unconvincing. At the outset, it is important to note that the defendant in *Aetna* was not a landowner but instead was a contractor who had been hired to demolish an abandoned building. *Aetna*, 65 Ill. App. 3d at 620. The primary basis for imposing liability in that case was the fact that the contractor stored flammable fuel in the building and was aware that vagrants were smoking and cooking there. *Aetna*, 65 Ill. App. 3d at 623. Therefore, the contractor's liability was not predicated upon his failure to install safety equipment to prevent the *spread* of a fire but instead upon his negligent conduct in preventing the fire from starting in the first instance. *Aetna* is in conformity with case law imposing liability for damages arising from the storage of combustibles and other dangerous materials. See *Dealers Service & Supply Co. v. St. Louis National Stockyards Co.*, 155 Ill.

App. 3d 1075, 1079 (1987) (landowner may be held liable for fire that resulted from the accumulation of combustible materials).

Although there are a number of cases where a landowner has been held liable for fire damage to adjoining property, each such case involves a fire that *started* as a result of a negligent act by the landowner. See *Masinelli v. McDonald*, 251 Ill. App. 3d 398, 401-02 (1993) (landowner may be held liable for failure to repair defective fireplace flue); *Powell v. Star Fireworks Manufacturing Co.*, 162 Ill. App. 3d 647, 650-51 (1987) (landowner may be held liable for fire that resulted from methane gas leak). There have been similar holdings in cases between adjoining apartment tenants. See *American States Insurance Co. v. Whitsitt*, 193 Ill. App. 3d 270, 274-75 (1990) (tenant may be held liable when fire was caused by storage of combustible materials in the vicinity of the furnace). However, I am unaware of any case or common-law principle holding that a landowner can be held liable for his failure to install safety equipment to prevent the *spread* of a fire.

This is not to say that an adjoining landowner may not seek recovery based on an allegation of a violation of a legislative or municipal enactment. Apart from the common law, a landowner's violation of a public safety statute or ordinance may provide an independent basis to maintain a negligence action. See *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434-35 (1991). Indeed, in the instant case, all but one of the plaintiff's allegations of negligence relate to violations of the BOCA Fire Prevention Code of 1993. However, due to the plaintiff's failure to provide the relevant BOCA provisions and municipal ordinances, our consideration is limited to the defendant's remaining allegation that the defendant negligently failed to place fire extinguishers in accessible areas. I see no reason to create a new common-law duty simply because the plaintiff has failed to provide a sufficient record concerning the alleged BOCA violations.

Another troubling aspect of the authoring justice's analysis is that it imposes a duty that is broader in scope than the allegations of duty pled by the plaintiff. As already noted, the plaintiff's remaining allegation of negligence related to the defendant's failure to *place* fire extinguishers in accessible areas. Rather than limit its holding to this sole factual allegation, the authoring justice also imposes an obligation to maintain fire extinguishers, as well as install and maintain smoke detectors. As such additional factual allegations were not properly before us, I do not believe that they should be considered in our analysis.

Finally, I disagree with the imposition of liability for injury arising out of a third party's criminal act. The law imposes no duty upon a landowner to anticipate and protect against such acts. See *Hill v.*

*Charlie Club, Inc.*, 279 Ill. App. 3d 754, 758 (1996). The authoring justice sidesteps this issue, explaining that the plaintiff's allegations are predicated upon the defendant's failure to prevent the spread of the fire. I believe that this is a distinction without a difference. Simply put, absent a special relationship, a landowner has no liability to protect others from the criminal acts of third persons. *Hill*, 279 Ill. App. 3d at 758. The authoring justice's opinion abandons this legal principle and holds that liability may be imposed upon the defendant for his failure to protect the plaintiff from the fire that was started by an act of arson. I believe that such a conclusion is contrary to the law.

For all of these reasons, I would affirm the entry of summary judgment on behalf of the defendant.